In the Matter of the Application of MORTIMER M. NATILSON, Petitioner, Appellant, for an Order Pursuant to Article 78 of the Civil Practice Act against WILLIAM HODSON, as Commissioner of the Department of Welfare of the City of New York, and Others, Respondents, Annulling the Determination of the Respondents in Dismissing Petitioner from His Position of Social Investigator in the Department of Welfare of the City of New York, and Directing That Petitioner be Forthwith Reinstated.

First Department, June 19, 1942.

*Nathan Witt* of counsel [*D. William Leider* and *Harold I. Cammer* with him on the brief; *Liebman, Leider & Witt,* attorneys], for the appellant.

*George G. Gallantz* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel*], for the respondents.

TOWNLEY, J. Petitioner was appointed to the position of social investigator in the department of welfare on May 21, 1938, after a competitive examination. On January 2, 1941, he was accused of violating the rules of the department as follows:

" You violated Executive Order 38–53 issued March 26, 1938, and the Mayor's ruling of May 28, 1938, prohibiting engagement in any other occupation, profession, business or employment, in that while employed in the Department of Welfare you have worked in the Hecht Department Store located at 53 West 14th Street, New York City.

" These regulations were again called to the attention of the staff by Informational Bulletin 39–145 issued May 29, 1939."

There is no dispute that after the petitioner's appointment he did accounting work after office hours for the Hecht department store located in New York city. He received substantial compensation for this extra work. No claim is made that the outside work which was done evenings and on Saturday afternoons, interfered with the performance of his civil service duty. It does not appear that he was ever absent for illness or for business reasons during the period. He was dismissed on January 18, 1941, after a hearing.

Executive Order No. 38–53 is a communication from the commissioner of welfare to his staff and is merely a notice to that staff of a resolution adopted by the board of estimate on March 14, 1938. On that date the board of estimate recited section 881 of the New York City Charter which reads: " Every head of a department or elected officer except councilmen who receives a salary from the city shall give his whole time to his duties and shall not engage in any other occupation, profession or employment." On the basis of this provision, the board of estimate resolved " That no funds of The City of New York herein appropriated shall be used for the payment of wages or salary of any employee in the Department of Welfare, the Emergency Relief Bureau or any other department or bureau who does not give his whole time to his duties, and no employee shall be eligible to receive compensation from these funds who is engaged in any other occupation, profession, business or employment." These resolutions have been continued from year to year in relation to budgetary appropriations for these departments.

After the board of estimate had adopted the resolution above discussed, the mayor on May 28, 1938, addressed a " ruling " to the heads of all departments directing that employees in each department or bureau should be advised that it is contrary to the policy of the administration for civil service and other employees of the city to accept private employment whether outside of office

hours, at home or otherwise. It was stated that the economic condition was such that it was manifestly unfair for people who had city employment to compete with labor, professions or trades not so fortunately situated. The mayor then stated that employees who had extra employment were either cheating the city or their private employer.

Informational Bulletin 39–145 referred to in the charges is a communication of the commissioner of welfare to his staff dated May 29, 1939. It again directed the attention of all the members of his staff to the mayor's letter and Informational Bulletin No. 38–53, saying:

" Pursuant to this regulation, it is not permissible for Department employees to perform private employment whether during or outside working hours, at home or any other place.

" Failure to observe this rule leaves no alternative but dismissal."

Section 21 of the charter provides: " The council shall be vested with the legislative power of the city, and shall be the local legislative body of the city, with the sole power to adopt local laws under the provisions of the city home rule law or otherwise, without requiring the concurrence of any other body or officer except as provided in sections thirty-eight, thirty-nine and forty."

Section 70 of the charter provides that " the board of estimate, subject to this charter, shall exercise all the powers vested in the city except as otherwise provided by law." The resolutions on which the dismissal of the petitioner is grounded are clearly legislative in their nature. They purport to attach conditions to the holding of civil service positions in the various departments of the city of New York. Section 39 of the charter in relation to action by the board of estimate as to local laws makes their effectiveness contingent upon the approval of the board of estimate. It does not give legislative power to the said board.

The only section of the charter which is relied upon by the respondents to justify the action of the board of estimate is section 123. This section refers to the adoption of the budget and the powers of the board of estimate to increase, decrease or omit any item or to add items thereto. It provides in part as follows: " The budget so adopted shall be in such form as to provide appropriations for code items only, but such code items shall, except where the board of estimate makes a finding that it is impossible, be accompanied by supporting line schedules and shall set forth the terms and conditions under which such appropriations shall be administered." It is obvious that the provision as to administration refers to the manner in which payments shall be made, payrolls certified and safeguards taken to prevent wrongful payments. The matters covered by the phrase " shall be administered," in

other words, relate to all accounting problems and kindred subjects. It cannot be extended to grant legislative power to the board of estimate under the guise of passing the budget.

We find no provisions in the charter which vest the mayor with power to remove civil service employees for the reasons given herein. The charter furthermore does not grant power to the mayor or the board of estimate to make civil service rules.

Respondents finally argue that if there is no power in the board of estimate and in the mayor to regulate the conduct of civil service employees when off duty, the departmental " Informational·" bulletin, which adopted the policy of the board of estimate and the mayor, is a reasonable departmental regulation and must be observed.

The commissioners may doubtless make reasonable rules for the efficient conduct of their departments. But such rules must relate to the administration, in this case, of social welfare functions and duties. The questions of security of tenure and terms and conditions of employment are not matters which are left to the commissioners to determine. They are manifestly legislative in their nature and are beyond the scope of any implied powers in the commissioners.

It is unnecessary to pass upon the power of the civil service commission to make rules governing employment since there has been no attempt to justify the action herein on that ground.

As the case stands, we find no legal basis for the regulations. The order, therefore, should be reversed, with twenty dollars costs and disbursements, and the petition granted as prayed for.

GLENNON, COHN and CALLAHAN, JJ., concur.

MARTIN, P. J. (concurring). The object sought to be accomplished by Executive Order 38–53 issued on May 26, 1938, and the mayor's ruling of May 28, 1938, may be very salutary but must be obtained by legislation. Where a person is employed by a public agency on a full-time basis, such employee's entire time should be devoted to such employment. Additional employment during the evening or part of the night may well render such an employee unfit or unable properly to perform the duties required of him. Furthermore, when one person holds more than one position, the duties of all may be neglected. If a person properly performs his work in a position requiring full time there is little likelihood that he will have the time or energy to engage in any other employment.

Order unanimously reversed, with twenty dollars costs and disbursements, and the petition granted as prayed for. Settle order on notice.