In the Matter of JOHN BRODERICK et al., Petitioners, against CITY OF NEW YORK et al., Respondents.

Supreme Court, Special Term, New York County, April 11, 1944.

*Albert De Roode* for petitioners.

*Ignatius M. Wilkinson, Corporation Counsel* (*Seymour B. Quel* and *Harry Hollander* of counsel), for respondents.

PECORA, J. Petitioners, who are Battalion Chiefs in the Fire Department of the City of New York, bring this proceeding to challenge the validity of fifteen promotions to the position of Deputy Chief in the Fire Department made on June 28, 1943. The persons whose promotions are attacked were Battalion Chiefs on an eligible list for the position of Deputy Chief promulgated by resolution of the Municipal Civil Service Commission on June 28, 1939. On June 26, 1943, there existed five vacancies in the position of Deputy Chief in the Fire Department. The budget of the City of New York for the year ending June 30, 1943, provided for fifty-four Deputy Chiefs but only forty-nine of the positions were filled on June 26, 1943. On that date the Fire Commissioner made formal request to the Budget Director for leave to fill the five vacant positions of Deputy Chiefs and further for a modification of the budget so as to increase the number of positions of Deputy Chiefs from fifty-four to sixty-four. On June 28, 1943, the Budget Director delivered two certificates, approved by the Comptroller's office, to the Fire Commissioner. One of these certificates modified the budget of the Fire Department by increasing by ten the number of Deputy Chiefs, decreasing by ten the number of Battalion Chiefs, and increasing the required accruals so that the code total for personal service in the Fire Department remained unchanged. The other certificate authorized the filling of fifteen vacancies in the position of Deputy Chief. On June 28, 1943, the Fire Commissioner issued a special order to the Fire Department which included, among other things, the appointment of the fifteen persons remaining on the promotion list for Deputy Chief. This order specified in detail the assignments of the new Deputy Chiefs, which assignments were effective at 4 P. M. on June 28, 1943. Since the budget for 1943–1944 had already been adopted, in order to continue the condition existing as of June 30, 1943, a certificate was issued by the Budget Director on July 1, 1943, which modified the budget as it affected the Fire Department for the fiscal year commencing July 1, 1943, in a manner similar to the modifying certificate of June 28, 1943. The code total for the Fire Department remained unchanged.

The material facts governing the determination of this proceeding are not in dispute. The contentions of the parties raise only questions of law. The petitioners first urge that the promotion eligible list was established on June 21, 1939, was published in the *City Record* on June 22, 1939 (p. 4189, col. 2), and that consequently the life of the eligible list ended before June 28, 1943. It would follow from this that any promotions made from an eligible list which had expired would be invalid. (*Brown* v. *Craig,* 209 App. Div. 11; *Matter of Kornbluth* v. *Rice,* 250 App. Div. 654, affd. 275 N. Y. 597.) The Civil Service Law (§ 14) provides: " The term of eligibility shall be fixed for each eligible list at not less than one nor more than four years ". There is no showing here that any specific term was fixed for the list involved in this proceeding. However, under no circumstances could the list extend for a period of more than four years from its effective date. Paragraph (b) of subdivision 7 of section V of rule V of the Municipal Civil Service Commission Rules, after providing for the reporting of the results of an examination to the Secretary of the Commission in the order of the average rating of the candidates, continues as follows: " (b) The eligible list so reported shall be made public, but shall be officially promulgated only by resolution of the Commission after investigation of a sufficient number of candidates to anticipate the immediate needs of the service. The date of such resolution shall be the date of the promulgation of such list." While section 14 of the Civil Service Law provides for the " term of eligibility " it does not set forth the requirements as to the date from which the " term of eligibility " shall run. The language of the cases dealing with Civil Service matters has referred to the " creation " " establishment ", " preparation " and " publication " of eligible lists. However, the meaning of the provisions of paragraph (b) of subdivision 7 of section V of rule V above quoted is clear. No eligible list can be officially promulgated without resolution of the Commission and the date of the resolution is the date of such promulgation. I hold that the life of the eligible list is measured from the date of official promulgation. It is immaterial then that the *City Record* on June 22, 1939, published that the eligible list for promotion to Deputy Chief in the Fire Department had been promulgated on June 21, 1939, since it is indisputably shown that the list was promulgated by a resolution passed by the Civil Service Commission on June 28, 1939, and that no such resolution was adopted before that time.

Petitioners contend further that even if the date of promulgation infused the eligible list with life, the list would have expired on June 27, 1943. No decision has been called to the court's attention ruling on the method of computing the term of an eligible list. Under the circumstances section 20 of the General Construction Law presents an acceptable method of computation. That section provides in part: "In computing any specified period of time from a specified event, the day upon which the event happens is deemed the day from which the reckoning is made. The day from which any specified period of time is reckoned shall be excluded in making the reckoning". That method of computation was adopted in *Biloz* v. *Tioga County Patrons Fire Relief Ass'n.* (21 N. Y. S. 2d 643, affd. 260 App. Div. 976), which involved an action on a fire insurance policy which had to be commenced " ' within twelve months next after the fire ' "; in *Hudspith* v. *Pierce-Arrow Motor Car Co.* (180 App. Div. 147), which dealt with the necessity of making a claim under the Workmen's Compensation Law within one year after the injury; and in *Tismer* v. *N. Y. Edison Co.* (228 N. Y. 156), dealing with a three-year Statute of Limitations. (See, also, *Calagna* v. *Sheppard-Pollak, Inc.*, 264 App. Div. 589.) Therefore, in computing the four-year term of the eligible list, it is necessary to exclude June 28, 1939, and to include June 28, 1943. It is interesting to note that in *Matter of Kornbluth* v. *Rice* (250 App. Div. 654, affd. 275 N. Y. 597, *supra*), although the point was not raised, the court assumed the method of computation adopted here. There the court after having stated that the eligible list was established on September 2, 1931, continued with this pronouncement: " The persons on this list remained eligible for appointment until September 2, 1935 ".

Attack is made upon the power of the Budget Director to modify the budgets for the fiscal years 1942–43 and 1943–44 so as to provide ten additional positions of Deputy Chief. Defendants claim that the modifications were validly made in accordance with the provisions of the New York City Charter (1938) and the terms and conditions of the budgets. This case, for the first time, raises the novel problem of the extent to which the Board of Estimate may delegate its budget making powers in the terms and conditions of a budget. A discussion of this problem necessitates detailed reference to the provisions in chapter 6 of the Charter relating to the adoption of the budget of the City of New York. The first stage in the preparation of the budget is submission of estimates by department

heads to the Director of the Budget (§ 114) who conducts an investigation and holds hearings as to these proposals (§§ 113, 118). No later than April 1st in each year, the Mayor submits the executive budget for the ensuing year to the Board of Estimate and the Council (§ 121). Between April 7th and April 17th the Board of Estimate holds public hearings upon the proposed budget (§ 122). The budget, which must be adopted not later than April 27th by the Board of Estimate, is then submitted to the Council (§ 123). Section 124 provides that the Council may reduce or omit any item in the budget as adopted by the Board of Estimate " but it may not add or increase any item or vary the titles, description, terms or conditions of administration specified therein ". Changes made by the Council may be vetoed by the Mayor, whose veto may, in turn, be overridden by a three-fourths vote of the Council (§ 125).

Section 123 provides that the budget adopted by the Board of Estimate " shall be in such form as to provide appropriations for code items only, but such code items shall, except where the board of estimate makes a finding that it is impossible, be accompanied by supporting line schedules and shall set forth the terms and conditions under which such appropriations shall be administered."

Section 68 of the Charter provides as follows: " The board of estimate may at any time, subject to the provisions of this charter and of the civil service law and except as otherwise provided by statute, create, abolish or modify positions and grades of persons paid from the city treasury ".

Petitioners contend that the Board of Estimate had no power to create ten new positions of Deputy Chief during the course of the budgetary year, and furthermore if such power existed it could not be delegated to the Budget Director. In the prevailing opinion in *Matter of Rushford* v. *LaGuardia* (280 N. Y. 217, 222, affd. on reargument 280 N. Y. 846), the court said: " We have no doubt that the courts below rightly held that section 68 empowers the Board of Estimate to create, abolish or modify positions *only when it adopts a budget* ". (Italics mine.) This language has been considered as obiter dictum by some Special Term decisions (*Matter of Lange* v. *McGoldrick*, 173 Misc. 1020; *Matter of Weldon* v. *Rheinstein*, COTILLO, J., N. Y. L. J., June 6, 1939, p. 2606, col. 5). It has been characterized as a holding in *Matter of Lewin* v. *LaGuardia* (175 Misc. 165, affd. 261 App. Div. 940, affd. 287 N. Y. 28). Although the question involved in the *Rushford* case (*supra*) was whether

the Board of Estimate had the power to reduce a salary at any other but budget-making time, counsel for the City there argued that the power granted to the Board of Estimate under section 68 included the power to reduce a salary and therefore could be exercised at any time. While, technically speaking, the language quoted above was dictum, it nevertheless represented the considered and deliberate statement of our highest court upon a point specifically argued before it. As such it assumes an aspect of authority which should not be lightly dismissed by a court at Special Term. Whether it is *stare decisis* or not, this unequivocal pronouncement of the Court of Appeals has a sound basis in reason which commands adherence. The logical basis for such conclusion was fully expressed by Judge RIPPEY in his dissenting opinion in the *Rushford* case (*supra,* p. 232) (which portion of the opinion was adopted by the majority). He said: '' It cannot be presumed that the intent and purpose of those sections was to enable the Board of Estimate, in practical effect, *at any time* to nullify the purpose designed to be accomplished by the careful, well-considered and laborious preparation of the budget and thus to abrogate or hold at nought those provisions of the charter setting up the budget-making machinery * * *. To hold otherwise would mean that the Board of Estimate alone could overthrow a budget completely the day following its effective date or at any subsequent time and thereby nullify the purpose and effect of the executive budget, the right of the public to notice and to be heard when positions are established and salaries fixed and the authority of the Mayor and the Council over such positions and salaries after the Board of Estimate has done its work. I am not prepared to accept any conclusion that makes the provisions of the charter for the preparation, adoption and finality of the budget so meaningless ''. I conclude therefore that, under section 68 of the Charter, the Board of Estimate could not, except at the time of the adoption of a budget, increase the number of positions of Deputy Chiefs in the Fire Department from fifty-four to sixty-four.

But even if such power existed, it could not be delegated to the Budget Director in the terms and conditions of a budget. Both sides have urged section 128 of the Charter as relevant to a consideration of the Budget Director's powers. However, section 128 of the Charter seems immaterial. It provides that '' The director of the budget, upon request of the head of an agency, shall, with the approval of the board of estimate, have power during any fiscal year to transfer an appropriation

or part thereof from one line to another within the same schedule, provided the total appropriation for the applicable code item is not increased ''. Obviously, on its face that section does not give the Budget Director, at the request of a head of a department, the power to create additional positions. It might be pertinent if additional positions had properly been created and a transfer of appropriations was necessary to provide for payment of salaries. What was done here by the Budget Director must, therefore, depend for its legality upon whatever authority he obtained by virtue of the terms and conditions of the budgets under consideration. As quoted hereinbefore, section 123 of the Charter provides that the budget '' shall set forth the terms and conditions under which such appropriations shall be administered ''. In *Matter of Natilson* v. *Hodson* (264 App. Div. 384, affd. 289 N. Y. 842) the Appellate Division in commenting on section 123 said: '' It is obvious that the provision as to administration refers to the manner in which payment shall be made, payrolls certified and safeguards taken to prevent wrongful payments. The matters covered by the phrase ' shall be administered ', in other words, relate to all accounting problems and kindred subjects.''

The Budget Director has submitted an affidavit in this proceeding wherein he traces the historical development of the practice of incorporating terms and conditions in the budget. It is not necessary here to pass upon the question of the legality of the extension of the Budget Director's powers over a period of years through the instrumentality of terms and conditions of a budget. Our concern is only with those terms and conditions which, in the budgets under scrutiny, attempted to give the Budget Director power to create new positions interim budget-making times. In paragraph '' 3 '' of the terms and conditions of the budget for 1942–1943 (and the same provision appears in the 1943–1944 budget) it is provided: '' 3. Modification of Schedules: Any schedule supporting an appropriation for personal service contained in this budget may be modified at any time    *    *    *    by adding new positions under new or existing titles    *    *    *    but only by resolution of the Board of Estimate, or by the issuance of a certificate by the Director of the Budget, countersigned by the Comptroller, approving such modification    *    *    *. Such modification may be made by the Director of the Budget, countersigned by the Comptroller, upon request or consent of the head of an agency,    *    *    *  ''.

It is questionable whether the broad powers recited in the terms and conditions of the budget are properly '' terms and

conditions under which such appropriations shall be administered " (New York City Charter [1938], § 123). Certainly any argument which assailed the power of the Board of Estimate to create additional positions, except at budget-making times, would be more demolishing where the Board of Estimate has attempted to delegate such power to a budget director, who is not an elective official but one appointed by the Mayor. After the Board of Estimate has adopted a budget, the Council has the power to reduce items. If the Board of Estimate could delegate to a budget director the power to modify the budget, any reduction made by the Council could immediately be nullified, after the adoption of a budget, by a certificate of a budget director. The requirement of section 123 of the Charter, that code items shall be accompanied by supporting line schedules, contemplated not only the confinement of departmental expenditures to items for which specific appropriations had been made, but, in addition, had for its purpose informing the Council and the taxpayers of the proposed detailed expenditures of each agency of the government. This whole procedure for line schedules would become meaningless if they could be changed by the Budget Director after the adoption of a budget. An addition of ten positions in the important office of Deputy Chief in the Fire Department cannot be regarded as a routine ministerial act. It involves responsibility and discretion which should be exercised by the body elected to perform such duties. Whatever may be the inconvenience which the members of the Board of Estimate may suffer in performing such duty, under the present provisions of law the performance may not be delegated to a ministerial officer. Practical considerations advanced by the City for permitting such delegation have much merit. Its argument based upon practical construction as a result of procedure followed for a number of years is cogent and forceful. However, the fact that no frontal attack has been made in the courts upon such delegation of power and the placing of increasing responsibility for modification of the budget in the hands of the Budget Director, does not change the problem of whether such power exists under the Charter once it is raised. The argument of practical necessity is one that could better be addressed to a legislative, and not a judicial, forum. I believe that the power to create new or additional positions in the City government is an important one, and its exercise is properly restricted to the Board of Estimate by the Charter. Our responsible elective officials are charged with the duty of using that power as their own judgment and discretion direct, and

they cannot, under our law, delegate it to a ministerial officer. The whole plan of the Charter, disclosed in the provisions concerning the adoption and administration of the budget, is predicated upon the concept of finality in budgets, and places responsibility for appropriations in the officials elected by the people. Consequently I conclude that even if the Board of Estimate had the power to modify the budget by creating new positions after the adoption of the budget, such authority could not be delegated to the Budget Director in the terms and conditions of the budget. There is no need to discuss any of the other objections raised by petitioners. I hold that the creation of ten additional positions of Deputy Chief in the Fire Department was unlawful. Since no additional positions were created, no vacancies existed to be filled from the last ten names on the promotion list for Deputy Chief which expired on June 28, 1943. Those ten promotions were, therefore, improper and must be rescinded. The application is granted to that extent, but otherwise denied. Settle order.