PEOPLE ex rel. LYNCH et al. v. LENNON, Mayor, et al.

(Supreme Court, Appellate Division, Second Department. December 28, 1911.)

1. MUNICIPAL CORPORATIONS (§ 314*)—PUBLIC BUILDINGS—SPECIFICATIONS—CONTRACTS.

The specifications for a hospital building for a city contained a clause that, if rock was encountered in the course of excavating, the contractor should state in his bid how much extra per cubic yard it would cost to remove the same. Bids were solicited for the aggregate cost of the construction of the building according to the specifications. A bidder offered to do all the work of construction for $70,900, without making any provisions for any extra charge for the removal of rock. A third person's bid was for $70,888, and an extra charge of $2.50 a cubic yard for excavation of rock requiring blasting. The amount of rock to be excavated was 350 cubic yards, and the bidder was deemed the lowest bidder. *Held*, that the specifications, in view of the facts, were sufficient within Second-Class Cities Law (Consol. Laws 1909, c. 53) § 120, requiring specifications to set forth with sufficient detail the nature of the work to be done and of the materials to be supplied.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 314.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MANDAMUS (§ 3*)—COMPELLING EXECUTION OF CONTRACT FOR MUNICIPAL WORK.

Where the officers of a city awarded a contract for public work and prepared an official form thereof, but took no steps to execute it, the bidder awarded the contract was entitled by mandamus to compel the officers to execute the contract; the statute giving him no remedy at law in case a contract was not executed.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 8–34; Dec. Dig. § 3.*]

Appeal from Special Term, Westchester County.

Mandamus by the People, on the relation of James J. Lynch and another, against James T. Lennon, as Mayor of the City of Yonkers, and others, to compel respondents to execute a contract. From an order denying relief, relators appeal. Reversed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, BURR, and CARR, JJ.

William A. Walsh, for appellants.

Thomas F. Curran, Corp. Counsel, for respondents James T. Lennon and Thomas F. Curran.

James M. Hunt (George W. Elkins, on the brief), for respondent George T. Kelly.

CARR, J. This is an appeal from an order of the Special Term entered in Westchester county, denying the application of the relators for a writ of peremptory mandamus. The respondents Lennon and Curran are, respectively, the mayor and corporation counsel of the city of Yonkers. This city is governed in accordance with the provisions of chapter 55 of the Laws of 1909 (chapter 53 of the Consolidated Laws), known as the "Second-Class Cities Law." By section 55 of this statute it is made the duty of the mayor to execute on behalf of the city all contracts of the city, and to affix thereto the city seal. By section 204 of the same statute, it is provided that no written contract of the city providing for the payment of $200 or more shall become effective or acted upon until there shall be indorsed thereon by the corporation counsel or an assistant a certificate to the effect that the city officer, board, or department which has executed the same on behalf of the city had authority and power to make such contract, and that such contract is in proper form and properly executed.

The relators sought a writ of peremptory mandamus to compel the mayor to execute and the corporation counsel to certify his approval of a written contract for the erection of a hospital for the city of Yonkers. The respondents, the mayor and the corporation counsel, come into court, and state their general willingness to do the acts requested, but excuse their failure to do so because of a question of law which has arisen, and which, if not settled now, may lead to serious delay in the progress of the work of constructing the hospital. By section 120 of the statute above cited, there was created for second-class cities "a board of contract and supply, composed of the mayor, comptroller, commissioners of public works, corporation coun-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sel and city engineer." This board was required by said section "to let to the lowest bidder all contracts for the performance of any work" required by the city exceeding in cost the sum of $250. The section required a public advertisement for bids, and provided, further, as follows:

"Specifications for the performance of any work and for the supply of any materials shall be prepared and set forth with sufficient detail to inform all persons proposing to bid therefor of the nature of the work to be done and of the materials to be supplied, and written or printed copies thereof shall be delivered to all applicants therefor. Every contract for a public improvement shall be based upon an estimate of the whole cost thereof, including all expenses incidental thereto and connected therewith, to be furnished by the proper officer, board or department having charge of such improvements."

On June 26, 1911, the common council of the city of Yonkers adopted a general ordinance for the construction of a scarlet fever hospital, under the control of the commissioner of public works, according to the plans and specifications of a designated architect, which ordinance restricted the aggregate cost of the improvement to the maximum sum of $75,000, exclusive of architect's fees, and which likewise directed the board of contract and supply to take the proceedings provided by law to carry the ordinance into effect. Thereafter the board of contract and supply gave public notice to bidders and received and opened bids, compared the same, and by unanimous vote awarded the contract to the relators herein as the lowest bidders. Before a formal contract was executed, one George T. Kelly, who was one of the bidders, applied at Special Term for a writ of certiorari to review the action of the board of contract and supply in making its award. After a hearing before the court, the motion for a writ of certiorari was denied, but the learned court handed down an opinion in which it declared that the proceedings relating to the receipt of bids and the award of contract were irregular and invalid. Because of this judicial opinion, the respondent city officers have refrained from executing or approving the written contract, which had been prepared by the corporation counsel for formal execution.

The claimed invalidity in the proceedings arose as follows: Bids were solicited for the aggregate cost of the construction of the hospital building according to prescribed plans and specifications. These specifications contained a clause as follows:

"Rock: If rock is encountered in the course of excavating the contractor will state in his bid how much extra per cubic yard it will cost to remove the same."

The bid submitted by the relators offered to do all the necessary work of construction for the sum of $70,900, and contained no provision for any extra charge for the removal of rock. The bid of Kelly was in the sum of $70,888, and, in addition, an extra charge of $2.50 a cubic yard for excavation of rock which required blasting. Thereupon the board of contract and supply caused an estimate to be made of the approximate amount of rock excavation which might be required, and such amount was found to be about 350 cubic yards. Un-

der these circumstances, the relators were actually the lowest bidders, and the board proceeded to award the contract to them. It is claimed, however, that as the specifications of the architect, while referring to the possibility of rock excavation, had failed to make any estimate as to the amount of such rock excavation, such specifications failed to comply in essential particulars with the requirements of section 120 of the statute above cited, and that, therefore, the whole proceeding of soliciting bids and awarding a contract was invalid. This claim seems to be based upon a misapprehension of the terms of the statute, and it is sought to be supported by the authority of some decided cases which seem not at all applicable.

[1] The work to be done was to construct a scarlet fever hospital. Excavation was a necessary element, but its relative cost was minor and insignificant. Rock night be encountered, but, as it turned out, only in such small quantities that its removal, if paid for as an extra charge, would cost about 1 per cent. of the total cost of construction. There was, therefore, in the specifications a statement with "sufficient detail to inform all persons proposing to bid therefor of the nature of the work to be done," etc. There was, under these circumstances, no defect in the specifications which in any way interfered with real and free competitive bidding on the entire work of constructing the hospital as a completed structure. The very closeness of the bids received show how well informed the bidders were as to the exact situation.

The learned court at Special Term relied upon Brady v. Mayor, 20 N.. Y. 312, and a line of similar cases, most of which were governed largely by the provisions of statutes and ordinances peculiar to the city of New York, and none of which in essential principle requires the decision made herein at Special Term. In Brady v. Mayor, ut supra, a contract was made for a public improvement which consisted of grading, flagging, and curbing a portion of Eighty-Third street in the city of New York. The nature of the improvement required an excavation of fixed rock which entailed more than seven-eighths of the whole expense. Proposals were solicited for the work, but bids were asked only as to the flagging and curbing, and to the person bidding the lowest price for the laying of flagging and curbing the contract for the whole work was awarded, on conditions which allowed the lowest bidder on those items to fix his own price for the rock excavation. There was therefore no competition as to the rock excavation, which was not only a substantial part, but, in fact, the greater part, of the whole improvement. The general ordinances of the city required the street commissioner to state in his advertisement for bids the nature and extent, as near as possible, of the work required. There was nothing to prevent a fair approximation by the street commissioner of the extent of necessary rock excavation and a call for competitive bids on this part of the work as well as on the flagging and curbing. The contract awarded was held invalid because the court held that, under these circumstances, there had been actually no free or fair competitive bidding for the whole work,

when the competition was confined in fact to but a relatively minor feature of the improvement. As the court said:

"A form of proposal, which should have confined the competition in terms to the flagging and the curb and gutter work, and should have left the rock to be paid for by day's work, or at what it was worth, would have been fair upon its face, and would not have peculiarly exposed the city to imposition."

The vice of the situation presented in that case was, as the court said, as follows:

"The successful bidder was here arrived at by laying out of the account the bulk of the work in point of labor and expense, and testing the offers by the price proposed for an inconsiderable portion of it."

In the case at bar, the competition was as to construction of the whole building under defined specifications and plans. The lowest bidder was ascertained by testing the offers for the whole work. The possibility of rock excavation was indicated, and, as to that item, should it be found necessary, there was likewise freedom of competition so far as it was a part, though relatively an insignificant part, of the aggregate cost. The failure to make an estimate in the specifications of the probable extent of rock excavation had no necessary appreciable effect, if any at all, upon bids for the construction of the entire structure. Such was the result of the actual bidding, for the relators, with no better information than any other bidders, treated the question of rock excavation as so unimportant as to ask no "extra" compensation for its removal. Any other bidder could have done so as well, for all were on an equal plane. Under these circumstances, no imposition upon the city actually resulted or could have come about. In the Matter of Merriam, 84 N. Y. 596, this question is presented in a different phase. There a contract had been awarded for the construction of a sewer in the city of New York. A "material and important" part of the work consisted of rock excavation, laying of foundation plank and sewer pipe. While competitive bids were solicited as to the remaining items of the work, these specified large and important elements were withdrawn from competition, as the prices payable therefor were fixed arbitrarily by the terms of the proposals. It was held that the contract was not awarded in compliance with the city ordinances, which required every important and material part of the work to be open to competition. Here, again, there is an obvious distinction from the facts in the case at bar.

In Matter of Anderson, 109 N. Y. 554, 17 N. E. 209, the contract in question was upon an "unbalanced bid." It was for the regulating and grading of a portion of Fourth avenue in the city of New York. Proposals were issued for bids, and contained an estimate for 10,000 yards of earth excavation and 20,000 yards of rock excavation. The successful bidder, to whom the contract was awarded, bid for earth excavation $1.62½ per yard, and for rock excavation 2 cents a yard, the aggregate of his bid being $17,100, and the other bids ranging from $19,300, the next lowest bid, to $58,000, the highest. Nothing had been done to ascertain the basis for the estimates inserted in the proposals, and they were either mere guesswork or in-

tentionally deceptive, for, when the work was done, it was found that there were 20,576 cubic yards of earth excavation and but 9,241 cubic yards of rock excavation, with the result that the contractor was paid nearly twice as much as the amount of his aggregate bid. It was held that a proposal framed in this manner was in violation of the ordinance which required open competitive bidding, in view of the fact established at the trial that the contractor was paid about $12,000 in excess of the fair value of the work actually done by him. That case, however, seems so radically different in its facts from the one at bar as not to be an authority on the question here presented.

We are of opinion that the specifications, in the aspect now before us for decision, are not violative of the provisions of the statute as to competitive bidding, and that the board of contract and supply acted within its right in awarding the contract to the relators.

[2] The learned court at Special Term permitted the unsuccessful bidder, Kelly, to intervene in this proceeding, and on this appeal he urges that mandamus will not lie. Several authorities are cited by him to this effect, but all of them proceed upon the theory that the lowest bidder for a public contract has a remedy at law, if a contract be not entered into, after the bids are opened. Some of these authorities were based upon former provisions of statutes relating to the city of New York, which in express terms confirmed the contract to the lowest bidder. The statute relating to this present controversy contains no provisions of this nature, and it has been but very recently held that, unless the statute so provide, the lowest bidder has no remedy at law if no contract be executed. Molloy v. City of New Rochelle, 198 N. Y. 402, 92 N. E. 94, 30 L. R. A. (N. S.) 126. Hence, if mandamus will not lie, then the relators are without remedy. The situation here disclosed is somewhat peculiar. The respondent officers have awarded the contract and prepared an official form thereof. Nothing remains to be done except to execute it and certify it as provided by statute. These steps they have not refused directly, but they have simply remained passive. There is no sufficient legal reason why they should not proceed further, and mandamus is clearly available to compel them to the further action which is necessary to accomplish in fact the result of the formal unanimous action of the board of contract and supply in awarding the contract.

The order of the Special Term should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.