In the Matter of the Application of LUBOIL HEAT & POWER CORPORATION, Petitioner, against ALBERT PLEYDELL, as Commissioner of Purchase of the City of New York, and the CITY OF NEW YORK, Respondents.

Supreme Court, Special Term, New York County, April 15, 1942.

*Saypol & Kotler*, for the petitioner.

*William C. Chanler, Corporation Counsel* [*H. Broadman Epstein* of counsel], for the respondents.

SHIENTAG, J. This is a proceeding brought under article 78 of the Civil Practice Act to direct the commissioner of purchase of the city of New York to reject the bid of Paragon Oil Company, Inc., and to accept the bid of the petitioner for the sale of fuel oil to the city of New York for the months of April, May and June, 1942. The contract has already been awarded to the Paragon Oil Company, Inc., and the petitioner seeks to have the commissioner of purchase enjoined from carrying out its terms.

It is the contention of the petitioner that it was the lowest bidder and as such was entitled to the contract under the provisions of section 343 of the New York City Charter and that the award to the Paragon Oil Company, Inc., was in violation of the terms of that section. Section 343 of the Charter, formerly 1752 of the old Greater New York Charter, provides, so far as here pertinent, as follows: " b. The agency letting the contract may reject all bids if it shall deem it for the interest of the city so to do; if not, it shall, without other consent or approval, award the contract to the lowest responsible bidder, unless the board of estimate by a three-fourths vote shall determine that it is for the public interest that a bid other than that of the lowest responsible bidder shall be accepted. Tie bids are to be decided by the agency letting the contract and the award made. Whenever a contract is awarded to another than the lowest bidder, except by action of the board of estimate, the agency awarding the same shall file in its office and in the offices of the comptroller and the treasurer a statement in detail of the reasons therefor."

The bid of the petitioner was based on the proposition that imported oil would be furnished to the city of New York. The bid price for such product was 6.48 cents per gallon. The bid of Paragon Oil Company, Inc., was for domestic oil at 6.5 cents per gallon, a difference of .02 cents per gallon. The total difference in the bids on the contract, which is for about 500,000 gallons of oil, for in excess of $36,000, is $112. The city contends that because of certain resolutions adopted by the board of estimate in accordance with charter provisions the lowest responsible bidder was actually Paragon Oil Company, Inc., to whom the contract was awarded. Those resolutions go back to 1935. On November twenty-fifth of that year, for the purpose of fostering American products and aiding American labor, the board of estimate adopted the following resolution: " Resolved, by the Board of Estimate and Apportionment that, pursuant to the authority vested in the

Board of Estimate and Apportionment by section 1752 of the Greater New York Charter, the said Board does hereby order and determine that it is for the public interest that a bid other than the lowest bid should be accepted in all cases on all supplies, materials or equipment purchased by The City of New York, in the event that such lowest bid is made by or on behalf of supplies, materials or equipment manufactured or processed outside of the territorial limits of the United States and its possessions; and provided further that such bid is less than twenty five per cent below the lowest bid made by or on behalf of supplies, materials or equipment manufactured or processed within the United States or its territorial possessions."

Subsequently, on June 26, 1941, the board of estimate, in approving new contract documents, modified the form of determining the preferential between domestic and foreign products in the following language: " 23. Preferential for Domestic Supplies.— In determining the award, a preferential will be allowed in favor of domestic supplies as follows: twenty-five per cent (25%) of the bid price for domestic supplies will be added to the bid price for the foreign supplies. If a bidder proposes to furnish any item which is not produced, fabricated or processed in the United States or its territorial possessions, he must write the word ' foreign ' and the country of origin of such item in the schedule. Unless the designated standard is of foreign origin, failure on the part of the bidder to designate an item as foreign will be construed to indicate that the item offered is domestic."

Petitioner contends, first, that this preferential in favor of domestic supplies is now contrary to sound public policy; that our entry into the World War has brought about a change in conditions, rendering the resolutions of the board of estimate adopted in 1935 and 1941 unnecessary and inimical to the best interests of our country. Questions of public policy of the kind here presented are for the executive and not for the judicial branch of the government to determine.

The effect of the resolutions as here construed does not amount to a restrictive regulation of foreign commerce by the board of estimate and is not in violation of the clause in the Federal Constitution providing that " The Congress shall have Power  *  *  * to regulate Commerce with foreign Nations and among the several States  *  *  *." (U. S. Const. art. I, § 8, cl. 3.)

The resolutions of 1935 and 1941, referred to, cannot be said to constitute legislation on the subject because the board of estimate is not the legislative body of the city. These resolutions were undoubtedly intended to accomplish two purposes: First, to give public expression to the attitude or policy of the board of estimate

on the subject of a differential between domestic and foreign goods in making purchases for the city. As such, the resolutions served a legitimate purpose in advising prospective bidders of the board's policy and as tending to bring about uniformity of action rather than discrimination and favoritism in the awarding of purchase contracts.

The second purpose was to have such resolutions serve as rules for the commissioner of purchase to follow in awarding bids and to have a blanket resolution on the subject take the place of a three-fourths vote by the board of estimate in each individual instance where a contract was not to be awarded to the lowest bidder.

The resolutions, however, could not have any such legal effect. (*Shewan & Sons, Inc.*, v. *Mills*, 211 App. Div. 687, 692, 693.) This is certainly true where the board of estimate which adopted the resolutions has given way to a newly constituted board. Even where the same board is in existence it is more in harmony with the requirements of the charter to have the resolution supplemented by a three-fourths vote of the board of estimate in each individual case where the board determines that it is for the public interest that a bid other than that of the lowest responsible bidder shall be accepted. (*Matter of Emigrant Industrial Sav. Bank*, 75 N. Y. 388, 393.)

This procedure will result in no inconvenience, for the commissioner of purchase states " that the number of instances where the lowest bidders were persons or firms selling foreign products average thirty-six per year * * *. Since the declaration of war the instant case is the only one where such an event has transpired."

It is clear, therefore, that in awarding the contract in controversy to the Paragon Oil Company, Inc., the provisions of subdivision b of section 343 of the New York City Charter were not complied with. What, then, is the remedy of the aggrieved lowest bidder under the circumstances? The city has entered into no contract with him, and despite occasional intimations in some cases to the contrary, the rule seems well settled that the aggrieved bidder has no claim for damages in contract against the city, because his bid was improperly rejected. (*Molloy* v. *City of New Rochelle*, 198 N. Y. 402, 408, 412; *People ex rel. Lynch* v. *Lennon*, 147 App. Div. 537; *People ex rel. Haecker Sterling Co., Inc.*, v. *City of Buffalo*, 176 N. Y. Supp. 642.)

A taxpayer may bring a suit to restrain the city agency from awarding the contract in violation of law to one other than the lowest responsible bidder and from carrying out its terms.

To what extent will the court deal with the situation by way of an order in the nature of mandamus under article 78 of the

Civil Practice Act? In that connection it should be noted that such an order is always, to some extent at least, in the discretion of the court to grant or to refuse. Especially is this true where the party seeking such an order has a remedy at law for the redress of the alleged grievance, and where the issuance of a peremptory order would tend to embarrass the exercise of important administrative functions. But the discretion remains with the court even when there is no remedy at law. (*Matter of Warehousemen's Assn.* v. *Cosgrove*, 241 N. Y. 580, 581; *Matter of Durr* v. *Paragon Trading Corp.*, 270 id. 464, 469; *Matter of Coombs* v. *Edwards*, 280 id. 361, 364.) In the light of this principle it follows that rarely will the court by way of an order in the nature of mandamus direct an administrative agency to award a contract to a particular bidder. This is not because the court is without power to make such an order, but because in these cases involving public bidding there is generally vested in the appropriate governmental agency a certain amount of discretion, a certain residuum of choice. Where it is clear that the act of the governmental agency in awarding a contract to one other than the lowest responsible bidder is the result of arbitrary action on its part in willful disregard of the requirements of law, action for which there is no reasonable explanation or justification, the court will not hesitate under article 78 of the Civil Practice Act to direct the contract to be awarded to the bidder clearly entitled to receive it.

Where, however, as here, the action of the commissioner of purchase was not arbitrary, but was taken as the result of a misunderstanding of legal requirements, and where there is a reasonable explanation for the action that he took, the court will not order the commissioner to award the contract to the one who was the lowest responsible bidder, but will direct the commissioner to proceed to award the contract in accordance with the requirements of law.

Thus, in this case the board of estimate, if it determines it to be in the public interest to continue to follow the policy embodied in the resolutions of 1935 and 1941, or for any other reason, may, by a three-fourths vote in accordance with the provisions of subdivision b of section 343 of the New York City Charter, award the contract to the Paragon Oil Company, Inc. If the board does not wish so to do, the commissioner may award the contract to the petitioner, who, in the absence of the differential between foreign and domestic goods, was, in effect, the lowest responsible bidder.

Until the contract has been awarded in accordance with the requirements of the charter, the commissioner of purchase will be stayed from carrying out the terms of the contract now illegally entered into with the Paragon Oil Company, Inc. (See *Matter of Dictaphone Corp.* v. *O'Leary*, 287 N. Y. 491.) Settle order.