In the Matter of KAYFIELD CONSTRUCTION CORP., Appellant, v. NEWBOLD MORRIS, as Commissioner of Parks of the City of New York, et al., Respondents.

First Department, February 8, 1962.

374

*Louis E. Yavner* of counsel (*Nelson Rosenbaum* with him on the brief), for appellant.

*Leon A. Fischel* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel*), for respondents.

STEVENS, J. This appeal is from two orders entered November 24, 1961, at Special Term in an article 78 proceeding. One of the orders dismissed the appellant's petition and the other denied its motion for an injunction *pendente lite*.

A review of the proceedings will bring this matter in focus. On April 27, 1961, the Board of Estimate passed a resolution relative to the construction of a new service wing building at the Metropolitan Museum of Art. The work was to be done through six contracts, one of which was the General Construction Contract.

Thereafter the Commissioner of Parks advertised for bids. When the bids were opened on June 8, 1961, petitioner-appellant (herein Kayfield) was low bidder in the amount of $831,900 on the General Construction Contract. On June 13, 1961, the Commissioner of Parks (herein Commissioner) by letter advised the Board of Estimate of the aggregate amount of the low bids on the six contracts, and stated his view that the bids were reasonable.

On June 28, 1961, the Commissioner rejected all bids received on the six contracts referred to, including Kayfield's, and wrote to the Comptroller "You are hereby advised that all bids are rejected in the best interest of the City in accordance with Executive Memorandum 93S issued by the office of the Mayor."

Thereafter the Commissioner readvertised all six contracts for bid opening of July 18, 1961. On such opening Kayfield was again low bidder in the amount of $881,900 and respondent Triton Construction Corporation (herein Triton) was second low bidder in the amount of $897,300 for the General Construction Contract, the contract in issue here.

On or about July 20, 1961 the board was informed by the Budget Director that the Commissioner proposed to award the

contracts to the low bidders with the exception of the General Construction Contract, which should be awarded to Triton, "without a public letting at $897,300 in accordance with Section 343a of the New York City Charter." Such a proposal, the Director stated, was pursuant to Executive Order No. 93, and if permission is required from the board, a request must be made. On July 27, 1961, the board adopted a resolution authorizing the Commissioner to award the contract to Triton without a public letting.

In order to understand Order No. 93 we digress briefly. On or about June 5, 1961, Executive Memorandum No. 93 was issued, which stated an inspector of the Board of Education had testified before the Commissioner of Investigation that he had accepted things of value from a list of contractors doing business with such board. The list was appended to the order and all mayoral agencies were directed not to award contracts to such firms. This applied to contracts which had not yet been awarded and as to which such firms were the low bidders. The agencies were further instructed that "if permission to award to a second bidder is required from the Board of Estimate, kindly make your request." As to any future contracts, such firms were not to be considered "until further notice." The petitioner's name was not on that list. However, on or about June 15, 1961, Executive Memorandum No. 93S was issued, supplementing No. 93, and this memorandum added three additional names to No. 93, including Kayfield.

Kayfield, in its petition, set forth the foregoing; alleged the awarding of the contract to Triton was illegal, void, arbitrary and capricious; sought an order directing the Commissioner to award the contract to it as the lowest responsible bidder, and requested the cancellation of the contract award to Triton. It contended that as a matter of law Kayfield was the lowest responsible bidder. An affidavit filed in support of the petition recited Kayfield's experience in the construction business.

Respondents cross-moved to dismiss for legal insufficiency and the motion was granted.

On a previous appeal to this court we reversed the order dismissing the petition, granted leave to join the board as a party respondent, directed the respondents to answer the petition, and pointed out that the record was barren of facts constituting the basis of the action of the board, and there was nothing to show the board acted with or without knowledge of the facts (14 A D 2d 769).

Thereafter the board was joined as a party respondent and respondents, on November 16, 1961, answered the amended peti-

tion. The verified answer consisted of admissions, denials, reference to pertinent sections of the Charter of the City of New York and set forth in detail the circumstances and procedure dealing with the receiving of bids and awarding of contracts dealing with the new wing. With reference to Kayfield, the answer referred to and quoted from a report of the Department of Investigation that Kayfield stated it was its practice to give gifts to personnel of the Board of Education, that Kayfield had supplied that office with a list of 12 city employees to whom it had given gifts of packages of steaks in the years 1957, 1958 and 1959, and that such employees were in a position to help or hinder the work of the firm. The answer also referred to and quoted from an affidavit dated October 5, 1961 of a city detective assigned to the Department of Investigation as to an interview he had with Kayfield's president on March 23, 1961, in which the president produced bills which established the fact of such gifts. The total cost of the gifts exceeded $250.

The answer pointed out that following the report of the Department of Investigation, Executive Memoranda Nos. 93 and 93S were issued, directed to all mayoral agencies. Copies were forwarded to all nonmayoral agencies (which include the persons who constitute the Board of Estimate) for their information and guidance.

The answer sets forth that the letter of June 13, 1961, from the Commissioner to the board was sent before receipt by him of No. 93S (issued June 15, 1961). The Commissioner, after the receipt of the second bids, by letter dated July 19, 1961 sought the board's approval to award the contract to the second lowest bidder, Triton. The action was taken by reason of Executive Memoranda Nos. 93 and 93S. The Director of the Budget, in a report to the board dated July 20, 1961, supported and explained the reason for the request. Copies of such report, upon information and belief, were delivered to each member of the board at the executive session held July 26, 1961. The answer points out that copies of Nos. 93 and 93S had previously been transmitted to members of the board, and thus all members had knowledge of the facts and conditions when the board adopted its resolution on July 27, 1961, approving the award to Triton.

Kayfield's reply contends that the board did not act on the basis of true information because it lacked facts sufficient to warrant a determination.

Kayfield contends the gifts given cost it only $17.50 or $30 each, were not " things of value " within the meaning of the code,

were given in a spirit of good will at Christmas as a typical Christmas gesture. The total involved was something over $500.

On appeal Kayfield asserts that the board acted unreasonably, arbitrarily and capriciously.

As pointed out earlier, the answer and reply contain facts which impel a conclusion that the board had information concerning the gifts when it adopted the resolution of July 27, 1961. The question then is whether such information constituted a reasonable basis for the board's action.

Section 70 of the Charter of the City of New York provides that, subject to the charter, the Board of Estimate shall exercise all powers vested in the city except as otherwise provided by law. While subdivision a of section 343, dealing with public letting, provides that contracts in excess of $2,500 shall be by public letting on sealed bids " except that in a special case the board of estimate by a three-fourths vote may order otherwise." Since the board did order otherwise it remains to be determined if the board properly considered this a special case.

Section 886 (New York City Charter) prohibits the acceptance by officers or employees of the city of any gift, loan or thing of value from persons or corporations doing business with the city, and provides further "(3) Any violation of any of the provisions of this subdivision shall, at the option of the comptroller, render forfeit and void the contract, work, business, sale or transaction affected." Obviously, if the Comptroller may void a contract for a violation where work has been undertaken, he may certainly recommend a denial of the contract at its inception where a violation is discovered prior to the letting. Clearly the Mayor, acting through his Budget Director, has analogous powers in this respect.

The Mayor as the chief executive officer of the city (New York City Charter, § 3), responsible for its guidance and the welfare of its people, has the duty: " 3 To keep himself informed of the doings of the several agencies of the city and to see to the proper administration of its affairs and the efficient conduct of its business. 4 To be vigilant and acting in causing all provisions of law to be executed and enforced." (New York City Charter, § 5, subds. 3, 4.) Under and by virtue of such powers he may properly call the attention of the city officials, and the departments of the city, to any situation which he deems actually or potentially inimical to the city's well-being. This he did. In doing so the Mayor did not deprive either the board or the Commissioner of their freedom of action or usurp their function. (Cf. *Matter of Guinier* v. *Kern*, 31 Misc 2d 763.) And it should be noted that Executive Memoranda Nos. 93 and 93S, do not, on

their face, bar the listed firms permanently from all future dealing with the city. In that respect the orders are advisory and precautionary.

It must be recognized that it was the board which had the power to act and give weight to or reject the recommendation (New York City Charter, § 70; § 343 subd. a). Nor is it necessary that the Mayor be physically present to give the actions of the board, otherwise properly taken, validity. He may be represented by the Deputy Mayor. (New York City Charter, § 9.)

Since the giving of gifts was not disputed, such gifts, by virtue of the action taken by the board, were, in its opinion, sufficient to warrant treatment of this matter as a special case. It is not the function of judicial review in an article 78 proceeding to weigh the facts and merits *de novo* and substitute its judgment for that of the body reviewed, but only to determine if the action sought to be reviewed can be supported on any reasonable basis. (Cf. *Matter of Diocese of Rochester* v. *Planning Bd.*, 1 N Y 2d 508, 520.) In so doing we are permitted to consider the facts established as well as inferences reasonably to be drawn therefrom. Nor is pecuniary responsibility the sole criterion for determining the lowest responsible bidder. The term " implies skill, judgment and integrity as well as sufficient financial resources." (*Picone* v. *City of New York,* 176 Misc. 967, 969; 43 Am. Jur., Public Works and Contracts, § 42.) The awarding agency may investigate and consider the background of the bidder, and " in the absence of illegality, fraud, collusion, corruption or bad faith " the courts should not interfere. (*Picone* v. *City of New York, supra,* p. 970; see, also, *Matter of Caristo Constr. Corp.* v. *Rubin,* 15 A D 2d 561, affd. 10 N Y 2d 538.)

Subdivision b of section 343 vests the letting agency with the power to reject all bids " if it shall deem it for the best interest of the city so to do ". If not, the contract shall be awarded to the lowest responsible bidder unless the board by a three-fourths vote determines it is for the public interest that a bid other than that of the lowest responsible bidder be accepted. Thus it is clear Kayfield did not obtain a vested or property interest in the contract merely by reason of the fact that it submitted the lowest bid. The subsequent action by the board was merely an exercise of a power expressly conferred by the charter.

If the courts, where the fact of a gift is conceded, begin to weigh degrees of value in an attempt to determine if they be minimal so as to avoid the action of a board, which is assumed to have acted in good faith in awarding contracts, the difficulty of establishing a reasonable line of demarcation may well prove insurmountable. The fact that the court might attach a lesser

significance to the giving of the gifts by reason of their nature and value, is not sufficient to warrant a conclusion that the board acted without reasonable basis. Reasonable men may reasonably differ, but the agency or person saddled with the responsibility of decision, absent fraud, collusion, illegality or action clearly arbitrary and without foundation, should have its decisions upheld. Moreover, a presumption of regularity attends the action of the board, and it is incumbent upon the petitioner to overcome that presumption and establish the action to have been without reasonable foundation. Since the board had the information before it, we cannot say the action of the board is without some reasonable basis.

For the reasons heretofore stated the orders appealed from should be affirmed, with costs.

EAGER, J. (concurring). While I fully agree with what Mr. Justice STEVENS has written, I would like to specifically pinpoint the grounds for my concurrence in an affirmance of the order appealed from. The relief sought by the amended petition is an order in the nature of a mandamus order directing the Park Commissioner to award the particular construction contract to the petitioner and canceling the award of the contract to the Triton Construction Corporation. We are directly concerned here solely with the award of the particular contract. The Park Commissioner acted by virtue of a resolution by a three-fourths vote of the Board of Estimate adopted pursuant to the provisions of section 343 of the New York City Charter. Said provisions of the charter are valid, and, on the face of it, the resolution of the board was a valid and proper resolution. Certainly, the Park Commissioner, acting administratively, not only had a right to rely on such resolution but was bound to obey it. Furthermore, the Triton Construction Corporation was entitled to rely thereon in accepting the award of the contract to it and in proceeding with the work thereunder. (Applications for temporary injunctions and stays have been denied by the court, and the work under the contract is being performed along with the work of other contractors.)

The burden was not upon the Board of Estimate to justify its action. Presumptively the resolution was valid and sustainable. (See 62 C. J. S., Municipal Corporations, § 208; *Matter of Kaelber* v. *Sahm,* 281 App. Div. 980, affd. 305 N. Y. 858; *Matter of Tuller Constr. Co.* v. *Lyon,* 257 N. Y. 206.) The burden of pleading and proof in connection with a charge of arbitrariness and caprice on the part of the board was upon the petitioner. In my opinion, as Mr. Justice STEVENS has pointed out, it failed to sustain such burden. In any event, even

if we were to assume that, on the papers as a whole, there are triable issues of fact which might have a bearing upon whether or not the board acted arbitrarily or capriciously in adopting the resolution (which, however, I submit could not properly be raised in the first instance by a reply), nevertheless, a remand for a trial of the same would not be in order. Arbitrariness or caprice on the part of the board would render its resolution merely voidable. Thus, any ultimate determination should not, under the circumstances here, be given retroactive effect to deprive Triton Construction Corporation of its rights. Furthermore, on the showing here, there would be no justification in jeopardizing the continuance of the work on the public improvement. Thus, under the circumstances, the petitioner does not show a clear right to mandamus relief, and the proceeding should be dismissed (cf. *People ex rel. Belden* v. *Contracting Bd.,* 27 N. Y. 378; *Matter of Luboil Heat & Power Corp.* v. *Pleydell,* 178 Misc. 562 [SHIENTAG, J.] ; *Matter of Limitone* v. *Galgano,* 21 Misc 2d 376; *Matter of Epstein Co.* v. *City of New York,* 31 Misc 2d 759; also *Matter of Coombs* v. *Edwards,* 280 N. Y. 361, 364) but without prejudice to such other remedies, if any, that petitioner may have against Executive Order 93-S, or to restrain or review any action on future proposed contracts which may be based on such order.

STEUER, J. (dissenting). Petitioner was the low bidder on a construction contract advertised by the Commissioner of Parks. His bid was rejected and the contract awarded to the next lowest bidder. He brings this article 78 proceeding to compel the Commissioner to award the contract to petitioner. The matter was previously before this court. We then found that the Commissioner acted pursuant to a resolution of the Board of Estimate dated July 27, 1961, which resolution approved a letting of the contract to Triton Construction Corporation (the next lowest bidder) without public bidding, at the price of their bid. We then held that the issue was whether in passing the resolution the Board of Estimate was capricious or arbitrary, and we directed that the petition be served on the board and that the board be directed to answer (14 A D 2d 769). We also held that unless the board acted with knowledge of the facts its action might be deemed arbitrary. Its answer was to show what facts it acted upon. The board was served and has answered. A motion based on the petition and the answer so served has resulted in the petition being dismissed.

The answer filed alleges the following facts. The Department of Investigation conducted an investigation to see whether

certain employees of the Board of Education had been receiving gifts or gratuities from contractors doing construction work on contracts with the board. Following the report of that investigation, the Mayor, through the Deputy Mayor, addressed a memorandum (called Executive Memorandum No. 93, June 5, 1961) to all mayoral agencies. Each member of the Board of Estimate received a copy, not in his capacity as a member of the board but as an official of a " Mayoral Agency ", whatever that may be. The memorandum states that in testimony given to the Commissioner of Investigation an inspector of the Board of Education had admitted accepting things of value from contractors doing business with the board. A list of those contractors was attached. The memorandum directs that if any of the listed contractors is the low bidder on a contract not yet awarded, the contract should not be awarded to him. If permission is needed to award the contract to the second bidder, permission should be sought from the Board of Estimate. Petitioner was not named in the list of contractors, but in a Memorandum No. 93S of June 15, 1961, three additional firms, one of whom was petitioner, were added to the list. The answer further states that a letter from the Director of the Budget was submitted to the board proposing to let the contract to the second bidder pursuant to the directions contained in Executive Order 93. The board thereafter adopted the resolution awarding the contract to the second bidder.

It would seem that these facts fall far short of such a conclusive showing that the board acted with such knowledge that the charges of arbitrariness and caprice cannot be charged to it. No attempt is made to show that in passing on the resolution any member of the board had the executive memorandum in mind. While it is alleged that the memorandum was sent to each member, it appears that it was sent to him as an agency head and was received by his office, but there is nothing to show that he ever so much as saw it personally.

But the objection to the pleaded facts goes deeper. Even if it be assumed that each member of the board passing on the resolution had viewed the executive memoranda and was acting pursuant to them, the petition here is not thereby defeated. All that the original memorandum conveys is that the Mayor, on evidence satisfactory to him, has deemed that the banned contractors should not be allowed to contract with the city. But the Mayor has neither the authority to make such a direction nor to substitute his opinion on its advisability for that of the board. And if the board acts upon that naked opinion, it is derelict in its duties and its action cannot be justified.

The contractor has seen fit to include in the record an explanation of how its name came to be included in Memorandum 93S. It admits making gifts, which it characterizes as small, of frozen steaks to various officials at Christmas time. We do not pass on the question of whether these gifts are a valid reason for barring it from city work. That determination is the function of the board and unless its conclusion is so far out of line from proper standards that it can be held to be arbitrary or capricious, its decision would be final. But for all that appears, it made no determination, nor is it shown to have any information whatsoever on the subject, except the sketchy conclusion contained in the executive memorandum. Respondents do not even have the consolation that the sponsor of the memorandum, the Mayor, must be deemed to have knowledge of the underlying facts. He did not sit on the occasion that the board considered the resolution in question.

Our conclusion is that the determination of petitioner's petition on the allegations in this answer was at worst wrong, at best premature. The issues remain and they call for a trial.

The order dismissing the petition should be reversed and the matter remitted to Special Term for trial.

VALENTE, J. P., and McNALLY, J., concur with STEVENS, J.; EAGER, J., concurs in opinion in which VALENTE, J. P. and McNALLY, J., concur; STEUER, J., dissents in opinion.

Orders entered on November 24, 1961 affirmed, with $20 costs and disbursements to the respondents.