Nicholas A. Sordi, Jr., Esq. City Attorney, Glen Cove
We acknowledge receipt of your letter requesting a legal opinion. Your letter states:
 "Section 2-1 of the Charter of the City of Glen Cove states that the officers of the City shall consist of: `A Mayor, to be also supervisor; a Commissioner of Finance; a Commissioner of Public Works; a Commissioner of Public Safety; a Commissioner of Accounts'. Section 2-3 of the Charter states: `The Mayor and Commissioners shall constitute the City Council for the government of the City . . .' Thereafter, Sections 2-4 through 2-9 each set forth general powers and duties of the Mayor and of the Commissioners, as heads of their respective Departments.
 "In addition to other powers set forth in Section 2-4 of the Charter, the Mayor is granted the following power, in that Section: `to have general oversight of all departments of the City . . .'. Section 2-5 of the Charter states that the Commissioner of Finance is the head of the Treasury Department. Section 2-6 states that the Commissioner of Public Works is the head of the Public Works Department. Section 2-7 states that the Commissioner of Public Safety is the head of the Public Safety Department and Section 2-9 states that the Commissioner of Accounts is the head of the Department of Accounts. In addition to the foregoing, each of the foregoing Sections sets forth specific powers and duties with respect to each of the Commissioners."
You request our opinion whether under the provision of the Glen Cove City Charter, section 2-4, granting the mayor the power "to have general oversight of all departments of the city" the may or may direct a commissioner and/or the employees of a department headed by a commissioner, in the performance of duties.
We find no statutory guidelines and scant case law on this subject. However, we do find, in McQuillin Municipal Corporations, Third Revised Edition, § 12.43(a), the following:
 "The mayor as chief executive officer of the city is generally given power to supervise the other executive or administrative officers in the performance of their official functions and is obligated to see that each officer and employee discharges his duty, and that all laws and ordinances and charter provisions are enforced within the city or town. In the commission form of city government the control of the mayor over departments is that of an executive, and he is in no sense superior to the commissioners; the latter constitute the governing body." (Emphasis supplied.)
Also, Matter of Kayfield Constr. Corp. v Morris, 15 A.D.2d 373, has revelancy. It appears that the low bidder for a New York City construction contract had been shown in an investigation to have given things of value to some city employees, as a result of which the mayor, in an executive memorandum, requested that no city contracts be awarded to that company. The Board of Estimate rejected all bids and awarded the contract to a firm which had submitted the next lowest bid, upon which the lowest bidder commenced a review proceeding, in which the court held:
 "The Mayor as the chief executive officer of the city (New York City Charter, § 3), responsible for its guidance and the welfare of its people, has the duty: `3 To keep himself informed of the doings of the several agencies of the city and to see to the proper administration of its affairs and the efficient conduct of its business. 4 To be vigilant and acting in causing all provisions of law to be executed and enforced.' (New York City Charter, § 5, subds. 3,4.) Under and by virtue of such powers he may properly call the attention of the city officials, and the departments of the city to any situation which he deems actually or potentially inimical to the city's well-being. This he did. In doing so, the Mayor did not deprive either the board or the Commissioner of their freedom of action or usurp their function. * * *
 "It must be recognized that it was the board which had the power to act and give weight to or reject the recommendation * * *."
In another New York City case, Guinier v Kern, 31 Misc.2d 763, the mayor was notified by his investigation commissioner of certain improprieties committed by an employee and the mayor then directed the investigation commissioner to transmit a set of formal charges against the employee to the civil service commission for appropriate action. The mayor also personally called the matter to the attention of the commission with directions to suspend the employee pending the hearing and determination. The commission considered the matter and concluded "on their own responsibility" to serve the charges on the petitioner and to suspend him pending their hearing and determination. The court held:
 "The Mayor, as the chief executive officer of the city, is authorized by the provisions of the New York City Charter and by every standard of proper official conduct, to keep himself informed of the acts and doings of subordinate officials and their employees. It is his duty, where improprieties and offenses are brought to his attention, to cause them to be investigated and to direct that appropriate action be taken upon them by the proper authorities. By directing the notice of the members of the commission to the matters disclosed before his Commissioner of Investigation and requiring them to act thereon he clearly did not ursurp their functions or deprive them of their freedom of action."
In our opinion, the mayor of the City of Glen Cove has the power to supervise the other executive or administrative officers of the city and employees in their department in the performance of their official functions and is obligated to see that their duties are performed properly and all laws and ordinances are enforced within the city, but this control by the mayor does not in any sense make him superior to the commissioners who, together with the mayor, constitute the governing body of the city. If it is wished that the mayor have greater authority in this respect the city charter should be amended to provide precise guidelines.