VINCENT L. BUTLER, Individually and as a Member of the Police Department of the City of New York, as a Member of the Patrolmen's Benevolent Association, and as an Applicant for Membership in the Transport Workers Union of America, C.I.O., et al., Plaintiffs, *v.* GEORGE P. MONAGHAN, as Police Commissioner of the City of New York, Defendant.

Supreme Court, Special Term, New York County, August 23, 1951.

*David A. Fay* for plaintiffs.

*Ludwig Teller* for American Civil Liberties Union, *amicus curiæ.*

*Howard C. Kelly* for Civil Service Reform Association, *amicus curiæ.*

*John P. McGrath, Corporation Counsel (Michael A. Castaldi, Pauline K. Berger, Bernard Friedlander, Anthony Curreri* and *Barbara H. Carroll* of counsel), for defendant.

BREITEL, J. Plaintiffs, city police officers, seek a temporary injunction. The action is for a declaratory judgment to nullify a rule promulgated by the police commissioner, defendant herein, forbidding members of the police force from joining any labor union. These police officers ask for an injunction, during the pendency of the litigation, restraining the police commissioner from enforcing the rule by disciplinary action.

The ultimate merits of the action are not involved on this motion. That will and must be determined after trial or upon motion addressed to the pleading.

At that time, there will be determined the question whether the police commissioner has the power to prohibit members of the police force from becoming members of a labor union, or whether he lacks that power and his rule is invalid and void under the Constitution and statutes.

At this time we are concerned with two questions. Will plaintiff police officers suffer irreparable harm, if the police commissioner is not restrained now, which harm cannot be corrected even if they eventually succeed in obtaining a declaratory judgment in their favor? Without determining the merits, do plaintiffs show a likelihood of success on their part in this litigation, entitling them to the extraordinary provisional remedy of temporary injunction?

Addressing ourselves first to the matter of irreparable harm, it is difficult for plaintiffs to make such a showing. Plaintiffs are not now members of a labor union, in reference to which the police commissioner has threatened disciplinary action. They have made application to join a labor union, not yet in existence, which is to be chartered in the near future. The police commissioner has required such applications to be withdrawn on penalty of disciplinary action. The police officers may withdraw their applications, and if they do, they suffer no immediate loss in status, pecuniary or otherwise, except in the intangible value of progressing their membership in a labor union to be organized. If they do not withdraw their applications, and they are discharged under the rule they contend is invalid, they may procure a court review of the commissioner's action under article 78 of the Civil Practice Act. In such review, if they succeed, they must be completely restored to the rights and benefits they suffered as a result of invalid disciplinary action. There is inconvenience, and risk, in " testing " an allegedly invalid regulation of one's superior. Does that inconvenience and risk amount to such " irreparable harm " that a court should enjoin an administrative officer charged with the control of an armed, disciplined, and quasi-military force maintaining protection of life, person, liberty, property, and organized government itself? That would be a grave responsibility for a court to arrogate to itself, unless it is patently clear that plaintiffs are likely to recover judgment on the merits.

We now turn to the question whether the eventual outcome in this litigation is clearly favorable to plaintiffs. The precise issue has never been decided in this State. It has arisen many times, elsewhere, and received the attention of the courts of last resort in many of our sister States. In every instance, without exception or qualification, the court has sustained the power of the police commissioner to prohibit members of the police force from joining proscribed organizations. (*State Lodge of Michigan* v. *City of Detroit*, 318 Mich. 182; *King* v. *Priest*, 357 Mo. 68; *City of Jackson* v. *McLeod*, 199 Miss. 676; *Fraternal Order* v. *Lansing Bd. of Police Comrs.*, 306 Mich. 68; *Carter* v. *Thompson*, 164 Va. 312; *Hutchinson* v. *Magee*, 278 Pa. 119; *Goodwin* v. *Oklahoma City*, 199 Okla. 26; *Perez* v. *Board of Police Comrs. of City of Los Angeles*, 78 Cal. App. 2d 638. See, also, in accord: *Coane* v. *Geary*, 298 Ill. App. 199; *Congress of Industrial Organization* v. *City of Dallas* [Texas Civ. App.], 198 S. W. 2d 143, and *Kane* v. *Walsh*, 295 N. Y. 198, Note, 163 A. L. R. 1361 *et seq.* Cf. generally: Charles S. Rhyne, " Labor Unions and Municipal

Employe Law '', 1946, for additional older cases and relevant decisions affecting firemen and other public employees, and 3 McQuillan on Municipal Corporations [3rd ed., 1949], § 12.140.)

No case or other authority has been brought to the attention of the court, nor could it find any in its own research, tendering a contrary thesis.

There have been several articles in distinguished law reviews discussing the precedents and the philosophy in this area. ` (45 Ill. L. Rev. 364; 54 Harv. L. Rev. 1360; 47 Yale L. J. 1109.) They express no different view of the law than has been followed in the cases cited above.

The article in the Illinois Law Review, written in 1950, states (pp. 364-377): `` There is probably no law prohibiting any employees, municipal or private [*sic*], from organizing. However, there are no cases holding that a public worker may not be fired if he does so, and many courts have upheld municipal determinations that union membership was sufficient grounds for discharge. With the exception of four relatively old cases, however, the employees involved were either policemen or firemen, and in most of the recent decisions these groups have been regarded as a class apart from other workers. This raises the question of what courts would do now if someone not a policeman or fireman were fired for joining a union. \* \* \* In summary, the municipal worker is allowed to organize, but should the city fire him for union activity there is probably nothing he can do — assuredly not if he is a policeman or fireman.''

McQuillan (cited *supra*) restated the proposition, as recently as 1950, thus: `` Members of a police force and its responsible officers in many respects constitute a military organization. Discipline must be enforced, and members of the force must surrender individual powers and freedom of action in favor of undivided allegiance to their public duty. As has been seen, reasonable rules and regulations for the government and discipline of the police force may be promulgated and are binding on members of the department.'' (Vol. 16, § 45.16.) (See Rhyne: Labor Unions and Municipal Employe Law, *supra*, pp. 150 *et seq.*)

In the now classic phrases of Mr. Justice HOLMES applicable to an analogous restriction on the rights of policemen: ``The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.'' (*McAuliffe* v. *City of New Bedford,* 155 Mass. 216, 220.)

Plaintiffs urge that the third paragraph of section 17 of article I of the State Constitution gives them the right to join labor unions, and that right may not be defeated by the police commissioner. That paragraph reads: " Employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

Plaintiffs argue that the provision applies to public employees. The record of the 1938 Constitutional Convention, at which this provision was added to the State's organic law, shows that the provision was amended in the Convention to delete language applying it to public employees. (II New York State Constitutional Convention of 1938, Revised Record, pp. 1215 *et seq.*, 1595 *et seq.*, but especially pp. 1223–1224 and pp. 1228–1229, including comments by Lt. Gov. Poletti.)

The court has disregarded the tenuous reaching for claimed jeopardy to members of the police force because of membership in the Patrolmen's Benevolent Association, the postal workers' union, the musicians' union or the like. The context of events and the context of departmental regulations reveal no threat of disciplinary action based on such membership. And that suffices to exclude consideration of the point on this motion. It may be that upon a plenary trial, or upon a motion addressed to the pleading, the issue may have moment as bearing upon the vagueness or indefiniteness of the rule attacked. On this motion we are concerned only with threatened disciplinary action based upon membership in labor unions. Such would be organizations of policemen affiliated with nonpolice labor associations or officered by nonpolicemen, in the pattern of " labor unions " as the concept now has common acceptance.

There has been no showing of irreparable harm, nor of a clear and convincing right to prevail upon the ultimate determination.

The court will, however, because of the significance of this case to the public welfare, and the police force, entertain, on the settlement of the order herein, an application to set the case down for early trial.

The motion is denied. Settle order.