Louis J. Capozzoli, J.
This is a proceeding under article 78 of the Civil Practice Act wherein the petitioners seek an order compelling the respondents to establish payroll deductions of dues from the salaries of individual petitioners and other members of the Patrolmen’s Benevolent Association. It is the *594 claim of the petitioners that the relief thus sought is in accordance with Resolutions of the Board of Estimate adopted January 12, 1956 and August 30, 1956.
It is not denied that the membership of the Patrolmen’s Benevolent Association consists of approximately 22,000 of the 24,000 New York City patrolmen on active duty. It is also undenied that, in April, 1959, the organization instituted an insurance plan, funded through membership dues, that extends group life insurance benefits to the individual petitioners and other members. Additional amounts of group life insurance are also funded through dues from members electing to take them. Petitioners claim that they can avoid the lapse of these policies, for nonpayment of dues, by authorizing payroll deductions of those dues and thereby assuring the continuance of their insurance.
The Resolution of the Board of Estimate, adopted January 12, 1956, approved the adoption by the city of a policy honoring authorizations by employees of salary deductions to pay membership dues of employee organizations. It is noteworthy that, in the body of the aforesaid Resolution, it is explicitly provided that the “ authorizations should be available to all unions, without discrimination ’ ’.
Thereafter, on August 30,1956, the Board of Estimate adopted a resolution whereby rules and regulations, governing the procedures under which city employees could have their organization dues voluntarily deducted from the regular payrolls of the City of New York, were established and further provided the form to be executed by the employee to authorize deduction of these dues.
The individual petitioners executed the authorizations in the prescribed form and, in accordance with other provisions of the Resolution of August 30,1956, submitted them to the Patrolmen’s Benevolent Association, who in turn filed them with the Chief Clerk of the Police Department, as further required by said resolution. Under the Resolution of August 30, 1956 the Chief Clerk was supposed to file the authorization with the Comptroller who would then start to deduct the dues to be paid to the Patrolmen’s Benevolent Association. However, the authorizations have gone no further than the Chief Clerk because the respondent, Police Commissioner, has refused to abide by the Resolutions of the Board of Estimate, claiming that they do not affect the Police Department. He argues that, under section 434 of the Charter of the City of New York, he has sole power to control the government, administration, disposition and discipline of the department and, therefore, the resolutions do not bind him. nor his patrolmen.
*595 The question, therefore, is presented as to whether the law grants the Police Department an exception from the resolutions adopted by the Board of Estimate. If i;he argument of the Police Commissioner is correct, then he is not bound by the terms of the resolutions and the petitioners have no just cause for complaint.
Under section 93-b of the General Municipal Law, adopted in April, 1958, about two years after the adoption of the Resolutions by the Board of Estimate, the Legislature followed suit and provided as follows: “The fiscal or disbursing officer of every municipal corporation or other civil division or political subdivision of the state is hereby authorized to deduct from the wage or salary of any employee of such municipal corporation or civil division or political subdivision of the state such amount that such employee may specify in writing filed with such fiscal or disbursing officer for the payment of dues in a duly organized association or organization of civil service employees and to transmit the sum so deducted to the said association or organization. Any such written authorization may be withdrawn by such employee or member at any time by filing written notice of such withdrawal with the fiscal or disbursing officer.” (Added by L. 1958, ch. 862, eft. July 1, 1958.) The afore-mentioned section clearly establishes the policy of the State in favor of the validity and propriety of the resolutions earlier adopted by the Board of Estimate. This statute provides no exceptions in favor of any particular department. The same can be said of the Resolutions of the Board of Estimate. They, too, provided no exceptions.
The respondent, Police Commissioner, argues, in effect, that allowing the patrolmen to avail themselves of the Resolutions of the Board of Estimate, smacks of unionization and he concludes that it would be detrimental to the maintenance of good order and discipline in the police force to permit the patrolmen to participate in a payroll deduction plan in the department. He bases his argument upon the contention that the Police Department is a quasi-military organization and he has sole control over it under section 434 of the charter.
It is true that the Police Department is “an armed, disciplined, and quasi-military force maintaining protection of life, person, liberty, property, and organized government itself”. (Butler v. Monaghan, 200 Misc. 327, 329.) In the last-cited case it was held that a rule promulgated by the Police Commissioner forbidding members of the Police Force from joining any labor union was not invalid. In short, because of their quasi-military character, patrolmen cannot insist on the same rights of union *596 membership that other citizens may enjoy. However, no one contends that the patrolmen have no right to band together in the Patrolmen’s Benevolent Association which has been in existence for over half a century as a voluntary' association of members of the uniformed force of the Police Department.
The Board of Estimate, when it acted in connection with the afore-mentioned resolutions, certainly knew that patrolmen cannot insist on union membership against the will of the Commissioner. (Butler v. Monaghan, supra). But it did not regard voluntary associations of employees, such as the Patrolmen’s Benevolent Association, as unions.
Similarly, under article 20 of the New York Labor Law, conferring certain rights on employees and labor organizations with respect to organizations and collective bargaining, employees of the State are excluded from the operations of its proxfisions (Railway Mail Assn. v. Corsi, 326 U. S. 88) and, yet, the Legislature enacted section 93-b of the General Municipal Law, thus recognizing the fact that employee organizations are not regarded as unions. Therefore, it is difficult to understand the contention of the respondent, Police Commissioner, that, allowing the Patrolmen’s Benevolent Association the payroll deduction plan, is, in effect, unionization and incompatible with the maintenance of discipline by him over his patrolmen. On the contrary, denying to these individuals this simple privilege, xvhich is extended to all employees of the city and State, might xvell create the feeling that they are relegated to the category of second-class citizens, thus affecting their morale and thereby possibly creating a disciplinary problem.
The argument is further advanced that there is no duty on the respondent, Police Commissioner, to obey the resolutions in question because they do not have the force of law. An examination of pertinent statutes discloses the following.
Subdivision 17 of section 20 of the General City Law gives cities, generally, power “ To determine and regulate the number, mode of selection, terms of employment, qualifications, powers and duties and compensation of all employees of the city and the relations of all officers and employees of the city to each other, to the city and to the inhabitants.” Subdivision 19 of the same section further gives cities power “ To regulate the manner of transacting the city’s business and affairs and the reporting of and accounting for all transactions of or concerning the city. ’ ’
Section 70 of the New York City Charter provides: “ The board of estimate, subject to this charter, shall exercise all the *597 powers vested in the city except as otherwise provided by law. ’ ’
There is further found in subdivision b of section 62 of the charter: “ Except as otherwise provided in this charter or by statute, every act of the board shall be by resolution adopted by a majority of the whole number of votes authorized to be cast by all the members of the board.”
Subdivision 3 of section 981 of the charter provides: ‘ ‘ The term ‘ law ’ or ‘ laws ’ shall include the constitution, this charter, any statute, the administrative code, any local law, and any ordinance, rule or regulation having the force of law.”
Since the Board of Estimate exercises the powers vested in the City of Now York (Nappi v. La Guardia, 295 N. Y. 652; Matter of McCarthy v. La Guardia, 283 N. Y. 701; Matter of Lewin v. La Guardia, 287 N. Y. 28) subject to certain exceptions which are not applicable in this case, the resolutions in question are binding on all of the city employees, with no exception. The subject matter of the resolutions is plainly beyond the jurisdiction of the Police Commissioner. Except as he is authorized by section 434 of the charter, he, too, is bound by any action which the city takes affecting its employees. Subdivision 7 of section 981-1.0 of the Administrative Code defines “ ‘ Employee \ Any person whose salary in whole or in part is paid out of the city treasury.”
His position that section 434 of the charter authorizes him to disregard these resolutions is untenable. There is nothing in the language of the resolutions which has any relation whatever to the prejudice of good order, efficiency or discipline of his men. The court sees no conflict between the exclusive right of the Police Commissioner over the discipline of his men and the provisions of the resolutions. As a matter of fact, the Board of Estimate heretofore adopted a resolution which placed the Uniformed Force of the Police Department on a 40-hour week and no one has successfully challenged the power of the board to do so. (See Resolutions of Board of Estimate, Aug. 30, 1956, Calendar Nos. 325 A-C.)
This court would be the first to attest to the integrity, sincerity and devotion to duty of the Police Commissioner. However, this is not a matter of personalities. It has been long established that ours is a government of laws and not of men. Therefore, no matter how sincere the Commissioner is in his refusal to abide by the terms of the resolutions, such refusal is not only unlawful, but in the time-honored language of the courts, arbitrary, capricious and unreasonable. (Kane v. Walsh. 295 N. Y. 198, 204.)
*598 The court has carefully examined the cases submitted by the respondents in support of their position. They are readily distinguishable.
The case of Matter of Natilson v. Hodson (264 App. Div. 384) was decided on the theory that the Board of Estimate, in adopting the resolution involved in that case, was, in effect, passing legislation and, since it is well settled that the Board of Estimate is not the legislative body of the city, of course the resolution was invalid.
The case of Matter of Luboil Heat & Power Corp. v. Pleydell (178 Misc. 562) involved a Resolution of the Board of Estimate which was held to be in violation of a section of the charter and an attempt to change existing law, which the board has no power to do.
In view of the above, this court is convinced that the application of the petitioners should be and is hereby granted in all respects.
Settle order on notice.