Henry Epstein, J.
By this motion, 24 members of the police force of this city seek to enjoin the Police Commissioner temporarily from holding any hearing to try them on charges of having violated section 2/47.0 of Police Department Rules and Regulations, which prohibits them from engaging in outside work (locally known as “ moonlighting ”)•
It is conceded in the papers that all of the plaintiffs did engage in outside-work during hours when they were not on duty for the Police Department and not on sick report.
The underlying action herein seeks a declaratory judgment declaring section 2/47.0 insofar as it imposes an absolute ban urton the engaging in outside occupations by members of the *173 police force of the New York City Police Department to be illegal and invalid.
The powers and responsibilities of the Police Department ■ have been set forth in section 435 of the New York City Charter, which provides as follows: “ The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public streets, sidewalks, parks and places; protect the rights of persons and property, guard the public health, preserve order at elections and all public meetings and assemblages; subject to the provisions of law and the rules and regulations of the commissioner of traffic, regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health; remove all nuisances in the public streets, parks and places; arrest all street mendicants and beggars; provide proper police attendance at fires; inspect and observe all places of public amusement, all places of business having excise or other licenses to carry on any business; enforce and prevent the violation of all laws and ordinances in force in the city; and for these purposes to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses.” (As amd. by Local Laws, 1949, No. 2 of City of New York and Local Laws, 1950, No. 27 of City of New York.)
Likewise, the Legislature has granted to the Police Commissioner the power to administer and discipline the police force and to make rules and regulations for the conduct and discipline of the police force and to make rules and regulations for the conduct of his department. This authorization is found in section 434 of the New York City Charter as follows: “ The commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department.”
Pursuant to this statutory authority, the Rules and Regulations of the Police Department were issued. Among the rules promulgated are the following:
“ 1. The Police Commissioner shall have cognizance and control of the government, administration, disposition and discipline of the Police Department, and of the police force of said department.”
“ 47.0. A member of the force shall be fit for and subject to duty at all times except when on sick report. He shall devote *174 Ms entire time and attention to the services of the department. He shall not engage in any other occupation except when suspended from duty without pay or when on vacation or other leave during the 30 day period after filing the application for retirement when on terminal leave. ’ ’
The latter section (47.0) is the critical language under attack on this motion. The Corporation Counsel alleges and it is not disputed that the language of section 47.0 has, in substance, been in effect since 1873.
The petitioners rest their case upon the decision in Matter of Natilson v. Hodson (264 App. Div. 384, affd. 289 N. Y. 842). In that case the petitioner was a social investigator for the New York Department of Welfare. He was charged with violating the rules of the department in that he engaged in another 11 occupation, profession, business or employment ” while employed in the Department of Welfare. The Board of Estimate adopted a resolution stating in substance that no funds of the City of New York shall be used to pay any employee in the Department of Welfare or any other department who is engaged in any other occupation, profession, business or employment. After the board passed this resolution, the Mayor addressed a ‘ ‘ ruling ’ ’ to the heads of all departments directing that employees be advised of the substance of the aforesaid resolution. The Commissioner of Welfare included the new regulation in an ££ Informational Bulletin ” issued to all employees.
Natilson worked after office hours and received substantial compensation. There was no allegation that such work interfered with his civil service duty. After a hearing, he was dismissed. Upon a petition in an article 78 proceeding, Special Term dismissed his petition and he appealed. On the appeal, the Appellate Division reversed Special Term and granted the relief sought in the petition, stating in part (p. 386): “The resolutions on which the dismissal of petitioner is grounded are clearly legislative in their nature. They purport to attach conditions to the holding of civil service positions in the various departments of the city of New York.” And further (p. 387):
“We find no provisions in the charter which vest the mayor with power to remove civil service employees for the reasons given herein. The charter furthermore does not grant power to the mayor or the board of estimate to make civil service rules,
‘ ‘ Respondents finally argue that if there is no power in the board of estimate and in the mayor to regulate the conduct of civil service employees when off duty, the departmental £ Informational ’ bulletin which adopted the policy of the board of estimate and the mayor, is a reasonable departmental regulation and must be observed.
*175 “ The commissioners may doubtless make reasonable rules for the efficient conduct of their departments. But such rules must relate to the administration, in this case, of social welfare functions and duties. The questions of security of tenure and terms and conditions of employment are not matters which are left to the commissioners to determine. They are manifestly legislative in their nature and are beyond the scope of any implied powers in the commissioners.”
The Presiding Justice concurred in a separate opinion wherein he stated (p. 387): “ The object sought to be accomplished by Executive Order 38-53 issued on May 26, 1938, and the mayor’s ruling of May 28, 1938, may be very salutary but must be obtained by legislation.”
The case went to the Court of Appeals (289 N. Y. 842), and was affirmed with the following language (p. 843): “ Order affirmed, with costs, on the ground that the regulation purported to be adopted by the department exceeds the powers conferred by subdivision a of section 885 of the New York City Charter (1938) upon heads of the departments. No opinion.”
Two Judges dissented on the ground that the rule promulgated
‘ ‘ was a reasonable regulation relating to the internal administration of the Department of Welfare and designed to eliminate a practice which may reasonably be considered to impair efficient conduct of the Department ” (p. 844).
The following year, 1944, Matter of Galfapietra v. Walsh (183 Misc. 6) came before Special Term to review the determination of the Fire Commissioner dismissing the petitioner for violating the section of the rules and regulations prohibiting firemen from engaging in another business or profession. Special Term (Benvenga, J.) dismissed the petition, stating (p. 7): “ since it is the duty of the Fire Commissioner to prevent and extinguish fires and protect life and property at any place within the city, it would seem that he has power, under section 885 (supra) of the Charter, to promulgate a rule prohibiting outside employment, if such a rule is essential for the efficient conduct of the Fire Department and reasonably necessary to carry out his powers and duties.”
The court in the Calfapietra case distinguished the Natilson case (supra) on the ground that the question determined in Natilson was the reasonable nature of the rule rather than the power of the Commissioner to make reasonable rules or, to put it another way, did the rule have any rational relation to the social welfare functions and duties of the Department of Welfare. The Appellate Division (269 App. Div. 734) affirmed without opinion, two Justices dissenting. The dissenting opinion *176 was based upon Matter of Natilson v. Hodson (supra) and it was there said (p. 734): “ The adoption by the head of the Fire Department of the regulation challenged exceeds the jurisdiction conferred upon the heads of departments by the quoted section of the Charter # * # The Fire Commissioner was not authorized to adopt such a rule without legislative sanction. The Legislature has not conferred such authority upon the Commissioner of the Fire Department.” The Court of Appeals (294 N. Y. 867) affirmed without opinion.
The distinction between the invalidity or illegality of a rule or regulation and the reasonableness of a regulation within the scope of the Commissioner’s powers is, to say the least, a narrow one. It is not clear whether the Court of Appeals intended to overrule the Natilson case (supra) when it decided the Calfapietra case (supra), and we can only assume that, in deciding the Calfapietra case, the Court of Appeals was upholding the regulation of the Fire Commissioner as a reasonable exercise of the powers granted to him by the charter. That being so, this court must deny the relief requested here. The petition is dismissed and the complaint dismissed.