William E. Ringel, P. J.
The defendant is a member of the New York City Police Department with the rank of patrolman. By information filed pursuant to an order of the Grand Jury of this county, he is charged with the unlawful possession of a narcotic drug, in violation of section 1751-a of the Penal Law, and section 3305 of the Public Health Law.
The People allege that on December 5, 1961 the defendant unlawfully had in his possession three glassine envelopes containing heroin. The defendant seeks to suppress the admission in evidence of this alleged contraband on the ground that same was obtained by reason of an unlawful search and seizure in contravention of the defendant’s constitutional rights (U. S. Const., 4th & 14th Arndts.), and the rule enunciated in Mapp v. Ohio (367 U. S. 643).
A hearing was held in support of that motion.
The facts established at that hearing are as follows: The defendant is a patrolman assigned to the 30th Precinct in Manhattan. About November 5, 1961 a certain informant, of poor reputation, complained to the Police Department that a patrolman of the 30th Precinct had offered to sell narcotics and had shown the said informant five glassine envelopes, containing alleged narcotics, which he had had in a pouch of the binder of his police memorandum book. The informant at that time could not otherwise identify the alleged seller. Nevertheless, the police arranged with the informant to make two different appointments with the suspected patrolman to see if a sale of a narcotic drug could be effected. On both occasions no police officer appeared.
On December 2, 1961 the date of the second abortive appointment, the informant, for the first time, definitely identified the suspected patrolman as this defendant. December 2 was a Friday, on which date the defendant’s tour of duty had ended at midnight. His next tour of duty commenced on Monday, December 5,1961 at 8:00 a.m.
On that morning the defendant reported to the 30th Precinct. After the usual morning muster and before he was dismissed from the muster to report to his post, Lt. Matthews of Police *853 Headquarters identified himself to the defendant, and told him he wanted to inspect his memorandum book. The defendant complied, and after glancing at some of the notations in the book, Lt. Matthews removed a rubber band and looked into a pouch in the binder of this book and removed therefrom a glassine envelope, believed to contain heroin. As he pulled this envelope out, he asked the defendant if he had anything else “ illegal.” The defendant allegedly replied, “ Yes, I have two other envelopes.” Whereupon, Lt. Matthews looked further and found a total of three glassine envelopes, all allegedly containing a narcotic drug. In the same pouch Lt. Matthews found a picture of defendant’s wife together with personal and official papers.
Lt. Matthews then took the defendant to the New York County District Attorney’s office where the defendant gave the Assistant District Attorney a statement. He was then taken before the Grand Jury where he testified, having waived immunity. He again testified before the Grand Jury on December 7, but was not arrested until December 14, 1961. Lt. Matthews had no arrest warrant or search warrant.
It was stipulated during the hearing that the court take judicial notice of the Police Department regulation which requires members of the police force to keep a memorandum book in a binder; that the pages of this memorandum book, known as UP 16, are supplied free of charge to each patrolman; that the binder for same must be purchased by the officer at his own cost and expense but said binder must conform to a type approved by the Police Department, and that said memorandum book is subject to inspection by the patrolman’s superior officers. (See Rules and Procedures of Police Dept., City of New York, ch. 2, § 2.0; ch. 3, §§ 12.0, 19.0, 26.0, 38.0; ch. 25, §§ 1.1, 28.0, subd. a.)
The police force of our city is a quasi-military organization. Its chief function is to maintain law, order, and the public peace in the community (New York City Charter, ch. 18, § 435; Matter of Moriarity v. Kennedy, 20 Misc 2d 593 [1959]; Butler v. Monaghan, 200 Misc. 327, 329).
Though members of the police force are civil service employees who are appointed only after successful completion of a competitive civil service examination and certification (New York City Civ. Serv. Comm. Rules, rule IV), yet unlike most other civil service employees they are subject to strict discipline and special proceedings, sanctions, and punishments. (Rules and Procedures of Police Dept., ch. 2, § 2.0; ch. 3, §§ 12.0,19.0; ch. 25, § 1.1; Administrative Code of City of New York, § 434a-14.0, subds. a, b, c, d; § 434a-20.0; New York City Charter, § 434, *854 subds. a, b; Patrolmen’s Benevolent Assn. of City of N. Y. v. Kennedy, 25 Misc 2d 63 [1960]; Flood v. Kennedy, 26 Misc 2d 172 [1961]; Tucker v. Adams, 141 N. Y. S. 2d 235 [1955]; Rubenstein v. Monaghan, 124 N. Y. S. 2d 76 [1953], appeal dismissed 285 App. Div. 949; Matter of Patrolmen’s Benevolent Assn. v. Wagner, 7 N Y 2d 813; Brenner v. City of New York, 9 A D 2d 729, affd. 9 N Y 2d 447.)
Subjecting himself to these departmental rules, regulations, disciplines and sanctions is implicit in his acceptance of his designation as a member of the police force and his oath of office (N. Y. Const., art. XIII, § 1; New York City Charter, § 435).
In view of the stipulation and citations, ibidem, the right to inspect the defendant’s memorandum book, or any other part of his equipment, by a superior officer, at the time, place, and under the circumstances herein, is unquestioned. His failure to consent to such inspection would subject him to such disciplinary action and procedure as in the opinion of the Police Commissioner would be warranted. But such action that might be taken by the Police Commissioner and the punishment, if any, that he might impose, could only be those authorized as against the defendant as a member of the police force, subject to review by the courts. (Matter of Simon v. Kennedy, 5 Misc 2d 17; Matter of Qrottano v. Kennedy, 5 N Y 2d 381; Matter of Kelly v. Monaghan, 9 A D 2d 92; Matter of Kaminsky v. Kennedy, 9 A D 2d 541.) This must be the rule, since ours is a government of laws and not of men (People v. Brim, 22 Mise 2d 335; Matter of Moriarity v. Kennedy, 20 Misc 2d 593).
This defendant is now before us not for any alleged violation of Police Department rules and regulations, but for a violation of the Penal Law and Public Health Law of this State. Such prosecution must be conducted according to the laws of this State and the rules of evidence which are in force and effect at this time (People v. Loria, 10 N Y 2d 368). If convicted, the defendant will receive such punishment as is prescribed by the laws of this State, although he may be subject to other punishment or penalties by the Police Commissioner, even if acquitted. (Brenner v. City of New York, 9 A D 2d 729, supra.)
In the case at bar, the defendant is being prosecuted as an ordinary citizen, and not as a policeman. In this prosecution he will be protected by the same legal safeguards as any other citizen — no more and no less, and his prosecution will be based on the law as it is now interpreted (People v. Loria, supra; N. Y. Const., art. I, § 2).
What is that law in respect to searches and seizures with reference to criminal prosecutions in this State?
*855 Overruling a long line of cases (Wolf v. Colorado, 338 U. S. 25; People v. Richter’s Jewelers, 291 N. Y. 161; People v. Defore, 242 N. Y. 13, cert, denied 270 U. S. 657; People v. Adams, 176 N. Y. 351, affd. 192 U. S. 585) the United States Supreme Court, in Mapp v. Ohio (367 U. S. 643, 655, supra) ruled “ that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.”
In other words New York State is now commanded by Mapp to follow the “ exclusionary rule ” by virtue of the Fourth Amendment to the Constitution of the United States made applicable to all the States via the Fourteenth. “ A comment on the Law of Search and Seizure [p. 2] ” by Judge Sobel, County Judge, Kings County, appearing in the Pleader — a very fine treatise on the subject.)
The Fourth Amendment of the Constitution of the United States provides: ‘1 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
This language in haec verba protects the “ person ” as well as the “ house.” The same provision is found in our State Constitution (art. I, § 12).
The language of the Fourth Amendment is clear and is to be construed liberally (United States v. Lefkowitz, 285 U. S. 452, 464). It condemns “ unreasonable searches and seizures.” In other words, to be valid the search and seizure must be reasonable.
A search is reasonable if conducted pursuant to a legal search warrant (People v. Loria, 10 N Y 2d 368, supra; Agnello v. United States, 269 U. S. 20; Taylor v. United States, 286 U. S. 1; Johnson v. United States, 333 U. S. 10; Judd v. United States, 190 F. 2d 649) or incident to a lawful arrest (Henry v. United States, 361 U. S. 98; Carroll v. United States, 267 U. S. 132) or if conducted by consent.
It is undisputed that no legal search warrant had been issued in this case.
Whether or not there was a lawful arrest and search incident thereto may be a moot question in view of the rulings of the Federal courts on what constitutes an arrest (United States v. Vita, 294 F. 2d 524; Fed. Rules Crim. Pro., rule 5 [a]; see U. S. Code, tit. 18, Appendix; cf. Code Crim. Pro., §§ 177-182) and the questions of probable cause. (Draper v. United States, 358 *856 U. S. 307; United States v. Di Re, 332 U. S. 581; Henry v. United States, 361 U. S. 98, supra.) However, a discussion of this point is not necessary in view of our determination of the question of consent.
Did the defendant consent to the search in question?
A consent to a search constitutes a waiver of rights secured by the Fourth Amendment. (Amos v. United States, 255 U. S. 313; United States v. Dornblut, 261 F. 2d 949; United States v. Sclafani, 265 F. 2d 408; United States v. Martin, 176 F. Supp. 262.) The courts indulge every reasonable presumption against the waiver of fundamental constitutional rights (United States v. Martin, supra; Johnson v. Zerbst, 304 U. S. 458; Green v. United States, 355 U. S. 184). The burden rests on the People to show by clear, positive, and convincing evidence that the consent was unequivocal, specific and freely given. (Judd v. United States, 190 F. 2d 649, supra; Karwicki v. United States, 55 F. 2d 225; Channel v. United States, 285 F. 2d 217.)
In resolving this question of consent, however, each case must stand or fall on its own special facts (United States v. Dornblut, supra; United States v. Martin, supra). The question as to whether consent to a search is voluntary is one of fact to be determined by the court and not by the jury. (United States v. Bianco, 96 F. 2d 97.)
The facts in this case disclose that the defendant is a patrolman in this city, on duty when his memorandum book and its binder were inspected by a superior officer who requested them of the defendant. The defendant knew that these items were subject to frequent inspections by his superiors, that they were official documents and items of his equipment which he was bound to submit for inspection under Police Department Rules and Regulations when requested to do so. These rules and regulations he implicitly agreed to obey when he became a member of the police force. Lt. Matthews did not act in any way so as to obscure the warning inherent in his request to inspect the memorandum book (United States v. Sclafani, supra) nor did he obtain possession of the book by ruse or trick (Gouled v. United States, 255 U. S. 298; Weeks v. United States, 232 U. S. 383) nor was there any duress or coercion exercised (Channel v. United States, 285 F. 2d 217, supra; cf. People v. Loria, supra).
As in the case of Davis v. United States (328 U. S. 582, 593) where public documents were sought to be inspected, the court stated, “ The right to inspect existed.” So in this case, the right to inspect the memorandum book, an official document *857 (U F 16) also existed. (See, also, Zap v. United States, 328 U. S. 624, citing Davis.)
The decision in the case of Wilson v. United States (221 U. S. 361, 378, 380) is pertinent to the issues here present on this motion. In that case the question of an alleged unlawful search and seizure under the provisions of the Fourth Amendment, was also raised. There the defendant sought to suppress the use of certain corporate hooks, on the ground, inter alia, that the corporate books also contained copies of his personal letters and correspondence. In answering this contention the court said (p. 378):
1 ‘ But his personal letters were not demanded; * * * and as to these no question of violation of privilege is presented. Plainly he could not make these books his private or personal books by keeping copies of personal letters in them.
“ Thus, in the case of public records and official documents, made or kept in the administration of public office, the fact of actual possession or of lawful custody would not justify the officer in resisting inspection, even though the record was made by himself and would supply the evidence of his criminal dereliction” (p. 380).
Under the law and under the facts, we find that the defendant consented to the search in question.
The motion to suppress should be accordingly denied.