In the Matter of MARIO L. DEVITA et al., Petitioners, *v.* SEYMOUR SCHER, as City Manager of the City of Rochester, et al., Respondents.

Supreme Court, Special Term, Monroe County, November 14, 1966.

*Harris, Beach, Keating, Wilcox, Dale & Linowitz* for petitioners. *George Hoffenberg* for respondents.

MARVIN R. DYE, J. Effective July 1, 1966, the respondent, City of Rochester (hereinafter City) and respondent, Local 1071, Rochester Fire Fighters Association AFL–CIO, I. A. A. F. (hereinafter Local 1071)[1] entered into a written collective bargaining agreement for a period of two years, which provided for the " checkoff " of union dues from the wages of its Fire Bureau Employees, viz.:

" ARTICLE I— ASSOCIATION RECOGNITION AND CHECKOFF

" 1.   *   *   *

" 2. The parties recognize that this is an agency shop agreement, and in accordance with such, it is understood that each employee who is a member of the bargaining unit hereinafter defined, but is not a member of Local 1071, shall be liable to contribute to the said Local, an equivalent contribution of such dues as are from time to time authorized, levied and collected from the general membership of said Local, and the City agrees to deduct an amount equal to the normal monthly dues paid by

1. Local 1071 is a labor union affiliated with its international parent union, having a State organization, and is a component of AFL–CIO. It has over 630 members in the designated bargaining unit consisting of the uniformed members of all ranks of the City fire-fighting forces and certain nonuniformed employees who are attached to the City Fire Bureau and who perform duties therein.

members of the Association from the earnings of each of said employees so covered by this Agreement.

" 3. The City recognizes the obligation of those employees who are or who may become members of the Association to pay their Association dues, and the City agrees to deduct Association dues from the wages of all Association members who appear on the City payroll, and forward such dues together with a list of employees for whom dues deductions are made, to the Association. Dues deductions are to be made bi-weekly in the case of employees paid weekly, and quad-weekly in the case of employees paid bi-weekly."

Concededly, the City intends to implement its agreement by deducting from the monthly earnings of each member of the Fire Bureau the sum of $2.50[2], effective from the contract date, July 1, 1966 and transmit same to Local 1071 as and for union membership dues, irrespective of whether such employee is or is not a member of Local 1071 and irrespective of whether there is on file a valid written consent authorizing such contribution[3].

By this proceeding, instituted pursuant to article 78 CPLR, the petitioners seek an adjudication declaring that the " check-off " arrangement, insofar as it purports to apply to these petitioners and all other members of the City Fire Bureau who do not have on file a currently valid written authorization for deduction for union dues in accord with section 93-b of the General Municipal Law, is contrary to law and for an order restraining and enjoining the City from making any such deduction from their earnings and all others similarly situated.

The petitioners fall into two categories, some of whom are members of Local 1071 and some of whom are not, but this difference is not regarded, as all have either not filed written consents authorizing a deduction for union dues from their earnings or have duly filed written notices withdrawing such authorization.

The question thus posed is one of law, turning simply on the scope and meaning of section 93-b.

While the general home rule provisions of the State Constitution extend to municipalities very broad powers in respect to matters of local concern, nonetheless, the exercise of such powers must not be inconsistent with the Constitution and the laws of the State (N. Y. Const., art. IX). The Legislature has expressed

2. The amount of $2.50 is pursuant to a dues schedule dated June 20, 1966 promulgated by Local 1071.

3. The order to show cause issued herein restrains the City *pendente lite* from making any deduction for union dues from the earnings of these petitioners and others who have not filed or have withdrawn written authorization.

its concern in the area of labor relations involving collective bargaining agreements between municipalities and a labor union by authorizing the fiscal or disbursing officer of every city to make a payroll deduction for Union dues when and in " such amount that such employee may specify in writing filed with such fiscal or disbursing officer ". (§ 93-b.)

Such clear and unequivocal language needs no construction. When fairly read, it leaves no doubt or uncertainty that before a city may make a payroll deduction for union dues it must have on file a currently valid written authorization signed by the employee to do so. In fact, it was not until the within agreement was negotiated that these parties thought otherwise. For instance, the prior bargaining agreement in effect between the respondents from July 1, 1964 to June 30, 1966, of which this present contract is a renewal, did not contain the provision quoted above, but was couched in statutory terms expressly providing that payroll deductions for union dues were to be made " upon written authorization on the part of such employees (members of Local 1071) the City agrees to deduct * * * dues from the wages of all * * * members who appear on the City payroll, *pursuant to Section 93-b* of the General Municipal Law of the State of New York ".

The deletion of such language from the agency shop clause herein controverted makes it quite evident that the respondents themselves recognized the inherent disability underlying their position, to offset which was included an additional clause designed to indemnify the City against loss in the event of litigation[4].

The respondents' contention, based upon the alleged permissive character of the enactment, must be rejected. While it has been judicially ruled — and properly so — that a fiscal or disbursing officer of a school board is not under a mandate to make payroll deductions from a school teacher's salary for union dues, even though a written authorization to do so had been filed (*Matter of McLaughlin* v. *Niagara Falls Bd. of Educ.*, 38 Misc 2d 143), it does not follow as a corollary that a fiscal or disbursing officer of a municipality has permission to make a payroll deduction when no current valid written authorization signed by the employee is on file. The permissive aspect of the statute has reference to the performance of an official act when, as and if an employee has filed written authorization and not before.

---

4. By stipulation, Local 1071 has agreed to appear for, furnish counsel and undertake the complete defense to this proceeding in behalf of the City.

While no one doubts that a city has the power to regulate the duties of and compensation to employees, it does not follow that, in the exercise of such power, it may disregard an expressed provision of an applicable State-wide statute. There may be, *arguendo*, a popular appeal in the contention that "free-loading" (in this instance participation in a union-sponsored betterment of working conditions) is inherently abhorrent to American concepts of fair dealing, it can play no part in the application of a clearly worded legislative enactment, since we deal here with a question of law and not with the differences of belief as to the principles involved. Here, the collective bargaining agreement ignores and attempts to circumvent plain, concise and easily understood statutory language. This cannot be allowed.

Accordingly, the prayer of the petitioners should be and hereby is granted, with costs.